RYAN, *Appellant*, v. McCULLY.

Division One, July 9, 1894.

1. **Practice**: DEMURRER TO EVIDENCE: JURY. In determining whether plaintiff has a case to be submitted to a jury, he is entitled to have the evidence viewed as favorably for him as the facts permit, and to have also the benefit of every reasonable inference therefrom.

2. **Negligence**: MASTER: FELLOW SERVANTS. A laborer, employed in building a bridge, and an engineer operating the hoisting machinery for its construction, are fellow servants, where both belong to the same working force, under the orders of the same foreman. The master is not liable for an injury to the laborer from the negligence of the engineer.

3. ———: ———: ———. The master's order to lower a beam, during the process of constructing a bridge, does not render him liable for the act of a servant (charged with the execution of the order) in lowering the beam so carelessly as to inflict injury on a fellow servant.

4. ———: PROOF: QUESTION ON LAW. Negligence is an affirmative fact to be established by proof before there can be any recovery of damages on account thereof; and it is a question of law whether or not the evidence tends to prove such negligence in any case.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*John J. O'Connor* for appellant.

(1) The court erred it taking the case from the jury. There was some evidence that Ryan's fall was caused by defendant's negligence, and where there is any evidence, be it ever so slight, in support of a material issue, it is the duty of the jury alone to determine the weight of such evidence. *Kelly v. Railroad*, 70 Mo. 608; *Barry v. Railroad*, 98 Mo. 62; *Clay v. Railroad*, 24 Mo. App. 39. (2) The inference that Ryan was "tilted or thrown off" the beam on which he stood through the sudden dropping of the beam from the derrick, is clearly raised by the testimony of Moore and Van Hook, and this negligent act (the sudden dropping), as well as its result on Ryan, like any ultimate fact in issue, may be established as well by reasonable inferences from other facts as by more direct proof. *Blanton v. Dold*, 109 Mo. 75; *Barnowski v. Halson*, 89 Mich. 523; *Rice v. McFarland*, 41 Mo. App. 498; *Rine v. Railroad*, 100 Mo. 228. (3) And even though the direct statement of the witness Rick, that Ryan stepped off, may seem stronger than the inference raising from the testimony of Moore and Van Hook, yet, if the circumstances were more favorable to the theory that

Ryan was "tilted off or thrown off," the jury might disbelieve. Rick, or the jury might disregard his testimony because of his relation to defendant. *Steamboat v. Matthews*, 28 Mo. 248; *Gregory v. Chambers*, 78 Mo. 299. (4) Although the employment was dangerous, Ryan was not bound to accept dangers not incident to his work but occasioned by defendant's negligent dropping off the beam from the derrick. *Thorpe v. Railroad*, 89 Mo. 662, and cases cited; *Huhn v. Railroad*, 92 Mo. 440; *Brown v. Railroad*, 99 Mo. 310.

*Pollard & Werner* and *Wentworth Terry* for respondent.

(1) There are no errors assigned. (2) If the whole evidence taken together is such that, if it had been submitted and the jury had found a verdict for plaintiff, it would have been the duty of the trial court to order a new trial, this court will not reverse for a refusal so to submit. *Landis v. Hamilton*, 77 Mo. 555; *Powell v. Railroad*, 76 Mo. 80; *Jackson v. Hardin*, 83 Mo. 175. The rule is well settled in this state that a mere *scintilla* of evidence will not answer as a basis on which to rest a verdict. *O'Hare v. Railroad*, 95 Mo. 662. (3) A party introducing a witness represents him to the court as worthy of credit, and stands as his indorser, and can not discredit him, though he may contradict him by showing, by other witnesses, that a fact testified to by him is different from that testified to by such witness. 1 Greenleaf on Ev. [14 Ed. 1883], sec. 442, p. 538; 1 Wharton on Ev. [3 Ed. 1888], sec. 549; 2 Best on Ev. [1 Am. Ed. 1876], sec. 645, p. 1080; *Bensberg v. Harris*, 46 Mo. App. 404.

BARCLAY, J.—This is an action for statutory damages ($5,000) for the death of Thomas Ryan.

Plaintiff is his widow. She charges defendant with causing her husband's death by negligence.

Defendant's answer makes a countercharge of contributory negligence on the part of Mr. Ryan; but admits the fact of his death and that he was in the employ of defendant.

The allegations in the petition which indicate the ground of plaintiff's claim are as follows:

"Plaintiff states that on the tenth day of December, 1891, her said husband was employed by defendant to assist in erecting the scaffolding for an iron bridge which said defendant was building across the railroad tracks on Twenty-first street in this city; that in the course of his employment he was required to stand upon a wooden beam, which was only twelve inches square and eighteen feet long; said beam rested on two long beams, one under each end, and was suspended twenty feet from the ground; there was no railing, ladder, guard or any other support along said beam to protect her husband from falling while standing on said beam; that he was standing on said beam, assisting with other of defendant's employees, under the immediate direction of defendant's foreman, to lower and place on the aforesaid crossbeams, parallel to the beam on which he was standing, a beam of like size as the one on which he was standing; that said beam thus being lowered was suspended above the crossbeams by ropes from a derrick which was operated by steam power, and conducted by defendant; that, in lowering said beam, defendant negligently permitted one end of said beam to strike with violence against said cross-beams, which caused plaintiff's husband to loose his balance and fall to the ground, and thereby causing his instant death; that defendant knew, or by exercise of ordinary care could have known, that it was dangerous to plaintiff's husband to cause him to stand on said

beam while engaged at his work, as aforesaid, without any support or means to protect him from falling therefrom; that the death of plaintiff's husband is due to, and was caused by, the negligence of defendant, Wm. McCully, in failing and neglecting to furnish to her said husband a reasonably safe appliance or platform on which to stand while engaged at his said work, as aforesaid, and in negligently and unskillfully lowering the suspended beam so that one end thereof struck one of the crossbeams, thereby increasing the insecurity of his position and aiding him to fall; that by reason of the death of her husband, caused by the negligence of defendant, as aforesaid, plaintiff has been damaged in the sum of $5,000," etc.

The case came to trial before Judge FISHER and a jury.

At the close of plaintiff's testimony the court gave an instruction in the nature of a demurrer to the evidence, which forced plaintiff to a nonsuit, with leave, etc.

In due time she moved to set aside the nonsuit; but the court denied the motion.

Having duly saved exceptions to these rulings, plaintiff brought the case to the supreme court by appeal.

The question is whether, under the facts disclosed by plaintiff's evidence, she could properly go to the jury. In considering it, plaintiff is entitled to have the evidence viewed as favorably for her as the facts permit, and to have the benefit of every reasonable inference therefrom, as well.

The relationship of plaintiff to the deceased was admitted, as also that he was in the employ of defendant at the time of his death.

Plaintiff introduced three witnesses, Messrs. Moore, Van Hook and Rick, in the order indicated.

We shall, however, first note the evidence of the last named, as he explains more fully than the others, the particulars of Mr. Ryan's mishap.

Mr. Rick testified as follows (according to plaintiff's abstract on this appeal):

"I was Mr. McCully's foreman in charge of the men while they were erecting that portion of the false work on which Ryan was at work at the time he fell and was killed. I hired him that day believing him to be a bridge man and competent to do the work; he told me he was a bridge man; he was at work only about an hour when he fell. The bridge proper is made of iron and in order to place the iron in position we erected a scaffolding called false work; this was done by standing upright timbers twelve inches square and of sufficient height, which was about twenty feet; several of these are set up, extending across the width of the structure; then on the top of these uprights there is a large beam laid down, each of the uprights supporting it. Now, this may be called a 'bent,' and at intervals of fourteen or sixteen feet there are like bents, erected in the same manner for the whole length of the work. Now, on top of these bents or crossbeams are laid timbers extending lengthwise of the bridge. It was on the end of one of these beams, where it crossed a crossbeam, that Ryan was standing at the time he fell. We had a traveler (that is what the other witnesses called a derrick) for hoisting up timbers and placing them on top in their proper places; we would first erect a portion of this false work, and when the iron stretchers and other parts of the bridge were in place, and the false work was no longer needed, we would remove it along on the top to where it was needed, at another place. We did this with the traveler; the traveler had a post on the front end which was rigged as a derrick with ropes

and pulleys. At the time of Ryan's fall we were working on the last span, and were hoisting one of the long beams which I have described, intending to move it southward to its proper place in the span; there were four or five beams already in place and I used great care to see that the work was done safely. It was my duty to see that the work was safe. The beam was about to be lowered. I gave the signal to the engineer to lower away; the derrick was operated by steam; the engineer lowered carefully, and the beam swung around towards Ryan, but did not strike or touch him, he was standing on the end of one beam; there were the ends of two beams together and under them a crossbeam, so that he had plenty of room to stand safely; when the beam swung to him, he stepped backwards and off; the beam was lowered easily and did not shake the scaffolding or cause his fall; he lost his presence of mind and stepped backwards and fell to the ground; if he fell from the place I say he fell, his body would have struck the ground south of the crossbeam, and could not strike the ground north of the crossbeam on which I say he was standing."

The testimony of Mr. Moore is that he was working at the wire mills near the bridge, and saw the accident, at about 1 o'clock P. M. He describes it thus:

"The men who were working on the bridge and scaffolding had just gone to work. I was standing near, with three or four others, looking up at these men at work on this bridge. It was not time for us to go to work. Someone spoke, and at the same instant I heard a noise as if someone fell on this bridge; and I cast my eyes up, and I saw someone passing through the air and someone said 'there is a dead man fell from the bridge.' I looked and I saw that it was the man that I saw on the top. At the time he fell, there was a

derrick on top of the scaffolding and the men were hoisting a long beam in the air above the top. When I saw it, just before he fell, the beam was near him and about two or three feet above the top. When I heard the noise and saw him fall, I looked up and saw that the beam which had been in the air was down on the crossbeams of the scaffolding. I do not know what made him fall; but heard the sound of the beam falling and looked up at the same instant and saw him falling to the ground. The fall killed him. I was standing about sixty feet from the place he fell. There was nothing to obstruct my view of him while he was at work, or while he was falling.''

Mr. Van Hook testified as follows:

''I was walking along on the railroad tracks and I got within about 100 feet of the Twenty-first street bridge. I was coming east. I saw this man standing on the timbers, and other men north of him working. I heard a sort of thumping noise like a timber dropping, and that drew my attention to where the false work was again, and I saw the man fall from me, southeast like, to the ground. I had been looking at the false work just prior to the fall. There was a derrick on the top of the scaffolding, and the men were hoisting a large timber about twelve inches square and about sixteen or eighteen feet long. The sound was like the dropping of the timber on the other timbers that made the top of the false work. When I looked up the man was in the act of falling from the beam on which he was standing, and the beam that had been in the sling of the derrick was down, laying crossways. It did not seem like he stepped off; it seemed like he was thrown off or tilted off. There were several timbers laying lengthwise on top of the false work and Ryan was standing on the beam to the west, the nearest one to me, and there was nothing to

obstruct my view of him.   I think the noise I heard was the noise caused by the beam falling down on the top.   At the time he fell he was standing on the west beam which extended lengthwise of the bridge, and about three feet north of the crossbeam.   He was not standing over a crossbeam, and when he fell his body struck the ground a little to the north of the crossbeam.''

At the close of Mr. Rick's examination, plaintiff's counsel moved to strike out his testimony on the ground of surprise.   But the court denied the motion.   It does not appear that any exception was saved to that action.

Then the defendant's counsel showed witness Rick a pencil drawing of the scaffolding, and the witness marked the crossbeam on which Ryan was standing at the time he fell.

Thereupon the same drawing was shown to the two former witnesses, Moore and Van Hook, both of whom declared that Ryan did not stand on the crossbeam or over it, as indicated by the witness Rick, but that, at the instant of his fall, he was standing on the west beam, about three or four feet north of said crossbeam.

The foregoing is the whole of plaintiff's case as presented here.

We have stated it fully, in view of the conclusion we have reached, and of our desire to give every detail of the evidence the full value to which it may be entitled.

If the statement of witness Rick is accepted, plaintiff has no standing in court, as her counsel concedes.   But, laying it, for the moment, out of view, what remains to justify an inference of defendant's negligence, especially any inference of the particular negligence charged in the petition?

It is not now claimed, on plaintiff's part, that

there was negligence in failing to have a platform for Mr. Ryan to stand on, while at work. Plaintiff has submitted here only the point that defendant was negligent in letting the beam loose from the derrick so as to fall upon the other beam, already in position, thus jarring and knocked Ryan from his standing place.

Mr. Ryan and the man operating the derrick or "traveler" were engaged in a common employment. If his death is ascribable to the negligence of the operator in letting the moving beam jostle or jar against that on which Ryan was standing, then the master would not be liable to plaintiff for that negligence under the settled law of this state.

There is nothing in the case connecting the foreman, Rick, with any such negligence, either by any order, or act of his, in reference to the moving of the beam.

Neither Mr. Moore nor Mr. Van Hook refers to any act or order of the foreman.

The former declares that he did not know what made Ryan fall, though his evidence tends to corroborate the inference to be drawn from the testimony of Van Hook.

The latter's statements would support a finding that Ryan was thrown off by the dropping of the beam (moved by the derrick) upon the cross timber.

Assume, for the moment, that that would tend to prove negligence in the handling or moving of the beam. To make defendant liable therefor, something more must be shown to indicate that such negligence was that of the master, as distinguished from the negligence of the fellow workmen of Ryan, who were operating the derrick. Rick was not operating it. He had general charge of the work; but the only evidence as to any directions by him, in regard to the movement of the beam, is his own. According to that,

when the beam was ready, he gave the signal to the engineer to "lower away," and the engineer, as he says, did so, "carefully."

A direction to lower the beam would not render the master liable for the act of the engineer in permitting the beam to abruptly fall in such a way as to knock Ryan off.

The beam had to be lowered and put in place. It was the engineer's duty to perform that act with ordinary care by means of the derrick. The order to lower it did not authorize or require the engineer to do so carelessly.

If he did so, there would be no negligence in the direction of the work. The negligence would be in the manner of executing the order. That negligence of the engineer would fall within reach of the rule which exempts the master from liability to one servant for any want of ordinary care on the part of another, engaged in the same work under a common employment. Mr. Ryan and the engineer belonged to the same working force, and were under the orders of the same foreman, who was present supervising the labor of both.

The evidence does not indicate any insufficiency of the machinery used in doing the work, nor is any negligence ascribed to defendant, in the petition or in argument, on that account, or for any incompetency of the engineer.

We have discussed the facts without reference to Rick's statement that he saw Ryan step off the beam.

We conclude that, in no aspect of the evidence, could an inference of negligence on defendant's part be reasonably drawn.

Negligence is an affirmative fact to be established by proof before there can be any recovery on account thereof. It may often be shown by inferences from

other facts, but the latter must reasonably and fairly warrant such an inference.

It is a matter of law, and part of the duty of the court, to determine whether or not facts shown in evidence have such a tendency.

In the case at bar it is clear that the most favorable view of plaintiff's testimony would not authorize an inference that Ryan's death resulted from any negligence for which defendant is liable to respond in damages under the existing law of Missouri. *Gibson v. Railroad* (1870), 46 Mo. 163; *Steffen v. Mayer* (1888), 96 Mo. 420; *Relyea v. Railroad* (1892), 112 Mo. 86; 18 L. R. A. 817.

The learned trial judge was right in so declaring.

The judgment is affirmed. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur.