RICHARDSON, Curator of HECKEL, Appellant, v. MESKER et al.

#### Division One, February 18, 1903.

1. **Concurring Negligence:** EMPLOYEE. If the injury to plaintiff is the immediate and direct result of two concurring acts of negligence, one by plaintiff himself and the other by an employee of defendant, plaintiff can not recover.

2. ———: ———: MACHINE. Plaintiff and defendant's employee were repairing a machine with which they had been working, and such employee put the machine in motion without giving notice to plaintiff that he intended to do so. But such employee did not know that plaintiff's hand was on the cogwheel which crushed it when it moved, nor had he any reason to believe his hand was there, for there was no real necessity for it to be there, or in any position of danger, in order that he might perform his part of the work. Besides, the danger was manifest, and the dangerous position was as well appreciated by plaintiff as it could have been by a skilled mechanic. *Held*, that even if the employee was negligent in putting the machine in motion without notice, plaintiff was also negligent in putting his hand in the dangerous position without notice to the employee, and the two acts of negligence concurring directly and immediately in the injury, plaintiff can not recover.

3. **Negligence:** FELLOW-SERVANTS: EMPLOYEES AT SAME MACHINE. Two employees of the same master, engaged in the same work on the same machine, under the control and supervision of the same foreman, are fellow-servants, even though one is only a boy fifteen years old, and they may otherwise differ as to their personalities and as to the nature of the particular part of the work each is to perform. And being fellow-servants, if the boy is injured through the negligence of the other, he can not recover damages for his injuries from their common master.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*L. M. Conkling* for appellant.

(1) The court erred in not permitting the jury to pass upon the evidence. The question of the contributory negligence of the plaintiff was a specific issue in the case, and the jury, and not the court, must determine that question. This is the settled rule in this State where the evidence, although small, tends to support the allegations of the petition or any material part of the same. Foster v. Railroad, 115 Mo. 165; 82 Mo. 276; 88 Mo. 306; 100 Mo. 194. (2) The allegations of the petition and the evidence in support of the same show that the boy Heckel was employed to do errands, and after two months of errand work, he was put to work

on a pair of shears, cutting pieces out of metal sheets when he was not running on errands. He was thus employed in another part, of the building, and in a different kind of work from the work done by Reynolds. While the boy was engaged on these shears on the morning of July 6th, superintendent Neihaus ordered the boy to quit his work at the shears and go and assist Reynolds on said machine, as the boy who was Reynolds' regular helper had been injured the day before on this same machine. Neihaus told the boy Heckel to do whatever Reynolds told him to do. The boy Heckel on the day he was injured was about fifteen years old and had worked for defendant Meskers as such errand boy for about four or five months. The boy had never before worked on or about said mill or machine, and had no knowledge of its workings or any experience in its operation, and had no knowledge of machinery. This particular machine was a large one and was operated by a system of cranks, bolts, rods, belts, pulleys and cog-wheels, and was set in operation by a foot treadle or levers. The work which the boy was thus ordered to do was work of greater danger and hazard. ' The position increased the liability to injury. He had not contracted to do such work. He was taken away from his regular work by superintendent Neihaus and placed under the control of Reynolds, the manager of said machine, and ordered by Neihaus to assist Reynolds on said machine and to do whatever Reynolds told him to do. The boy was kept to work on this machine against his request twice made, to Neihaus, to be left off because of his severe headache. While assisting Reynolds on the machine it got out of order and Reynolds stopped it to repair it. To repair it Reynolds used a long strip of galvanized sheet iron eight feet long and five or six inches wide. Reynolds ordered the boy to hold one end of this strip to the machine while he clinched the nail in the other end and he would then come down and clinch the nail in the end the boy was holding. To hold it in place the boy had to lean over on his left side and hold it with his left hand. The strip came up

about even with the boy's eyes.   It was difficult for the boy to thus hold the strip.   It would slip down in spite of the boy's efforts to hold it in place.   It taxed his strength to do it because of his difficult position.   The machine was standing still.   To brace himself and to get more strength to hold the strip in place he put his right hand on the small cogwheel which was on the machine and just in front of his right shoulder.   This steadied him and enabled him to better hold the strip in its place until Reynolds could clinch the nail in the upper end and come down and clinch the nail in the end the boy was thus holding.   This act of the boy was not improper or negligent, because the machine was standing absolutely still, and had been stopped to be repaired and there was no danger to the boy in doing so.   No danger was obvious or could have been reasonably apprehended.   It was what any careful, prudent person of more mature years and of more experience would have done under the same conditions and like circumstances.   The machine was standing still and the boy was waiting for Reynolds to come down and clinch the nail in the end the boy was thus holding.   Had Reynolds before starting the machine come down and clinched the nail, as he told the boy he would do, the boy would have been relieved of his grasp on the strip and he would not have been injured.   It is self-evident the boy would not have been holding the strip or would not have put his right hand on the cogwheel, if the machine had been in motion.   (3)   The boy was put in the place, not by his own voluntary act, but by the orders of Reynolds, through the direct act of Neihaus, the general manager, who took the boy from the work he was employed to do, and sent him to do more dangerous work and to do whatever Reynolds told him to do. Hence, the boy in executing the order of Reynolds, was obeying the orders of Neihaus, the general manager.   Dowling v. Allen, 74 Mo. 19; Hutson v. Railroad, 50 Mo. App. 306.   (4)   Neihaus was a vice-principal, and his orders to the boy were the orders of the defendants Meskers and bound them to the

extent of making them liable for the boy's injury. Moore v. Railroad, 85 Mo. 588; Miller v. Railroad, 109 Mo. 356; Dayharsh v. Railroad, 103 Mo. 570; Tabler v. Railroad, 93 Mo. 79; Smith v. Railroad, 92 Mo. 360; Stephens v. Railroad, 86 Mo. 221; Cook v. Railroad, 63 Mo. 397; Foster v. Railroad, 115 Mo. 180; Fort v. Railroad, 2 Dillon (U. S.) 267; Hill v. Gust, 55 Ind. 45; McKinney on Fellow-Servants, sec. 39; Stephens v. Railroad, 96 Mo. 207; Hutson v. Railroad, 50 Mo. App. 305.

*Percy Werner* for respondents.

(1) Reynolds, the operator of the machine, and plaintiff, his helper, were fellow-servants. Hawk v. McLeod Lumber Co., 166 Mo. 121. (2) The risk of injury from the unprotected cogwheels was obvious and the boy accepted the hazard. Higgins Carpet Co. v. O'Keefe, 79 Fed. 900; Nugent v. Milling Co., 131 Mo. 241.

BRACE, P. J.—This is an action for personal injuries to the said Walter Heckel, while in the employ of the defendants Benjamin T. Mesker and Frank Mesker; in which, at the close of the plaintiff's evidence the court sustained a demurrer thereto, and the plaintiff took a nonsuit with leave, and the court refusing to set the same aside, the plaintiff appeals. The only evidence in the case except as to the minor's expectancy of life, was that of the said Walter Heckel, who testified in substance, that on July 6, 1898, he was fifteen years and two months old, was in the employ of the Meskers at their factory, and had been for four or five months; that prior to the 5th of July he was engaged in running a pair of shears, by which patterns for skylights were cut out of galvanized iron, and which was operated by a treadle. That about seven o'clock on the morning of that day Mr. Niehaus, who was the foreman of the said defendant, having control and direction of their employees, directed him to go down and help Louis Reynolds on the *Die*. By this machine sheet or galvanized iron was moulded into shape for cornice. It

consisted of a steel die, working perpendicularly in the grooves of an iron frame eight feet long and one and one-half feet wide. The power was communicated to the machine by two cogwheels, one above the other, at the west end of the machine, the upper a large, and the lower a small one, on the end of the shaft. The machine was operated by a treadle at the east end, a step on the treadle causing the die to come down and go up once, and it then stopped, until started again by the use of the treadle.    That in obedience to the direction of Niehaus he helped Reynolds all that day.    Their work consisted in feeding the machine with strips of sheet or galvanized iron, Reynolds at the east end of the machine holding one end of the strips against the gauge, and operating the treadle, and Heckel at the west end holding the other end of the strip against the gauge.    That on coming to his work on the morning of the sixth of July, he was again told by Niehaus to help Reynolds at the machine that day.    That he did so, and they continued their work as on the day before, until about four o'clock in the evening, when the machine became out of repair, and Reynolds said to him, ''I have got to fix it.'' That Reynolds then got a piece of sheet or galvanized iron about eight feet long and four or five inches wide, with two holes punched in it, such holes being about five inches from either end of the strip, in which two nails were placed, by which the strip was to be attached to the rear of the frame, so as to hold the die within the grooves.    That after Reynolds put the strip in position he directed the witness to hold the west end up and in position, until he clinched the nail in the east end, and then he would clinch the one in the west end. That Reynolds passed to the front of the east end of the machine, clinched the nail in that end; and while he was doing so, witness was holding the west end of the strip in position with his left hand, and in order to brace himself for that purpose, placed his right hand on a small cogwheel in front of him, and while in this position and after Reynolds had clinched the nail in east end of the strip, the machine started, witness's

fingers slipped between the cogs of the wheel and were crushed. To recover damages for his injury this suit is brought. The cause of action charged in the petition being, ''That while said Walter Heckel was thus engaged in so helping, and while holding the material with which said Reynolds was fixing or repairing said machine or die, said defendants Meskers, by and through said defendant Reynolds, carelessly, negligently and wrongfully started and set said machine or die in motion and operation without first giving notice or warning to said Walter Heckel of the intention to start said die or machine in motion. That said Walter Heckel while thus engaged in helping in the fixing or repair of said machine, had no notice of any kind whatever or had any prior knowledge or indication of the starting and setting in motion of said machine. Plaintiff further states that by reason of the carelessness, negligence and wrongful act of said defendants Meskers and said defendant Reynolds in starting said machine, and setting the same in motion without first giving warning or notice to said Walter Heckel of the starting thereof, or of the intention to start the same at that time, the right hand of said Walter Heckel, who was at the time engaged in his work of so helping therein as aforesaid, was caught in said machine, and the entire four fingers thereof were crushed and cut off next to the knuckle joint of his right hand.''

Niehaus and Reynolds were both made parties defendant in the petition; but no judgment was asked against either of them; no cause of action was stated against Niehaus; and the cause was dismissed as to Reynolds before nonsuit. So that the action was practically against the Meskers only. Their answer admitted the injury to Heckel on one of their machines, denied all the other allegations of the petition, and set up a plea of contributory negligence.

It further appeared from the evidence of the witness, illustrated by a photograph of the machine, to the correctness of which he testified, that he was perfectly familiar with the operation of the machine, which was

simple and uncomplicated.  That the lower cogwheels of the machine on which he placed his hand was about on a level with his eyes.  That the cogwheels were in plain and unobstructed view almost in front of his eyes during the whole time he was at work on the machine. That he placed his hand on the smaller cogwheel so close to its intersection with the cogs of the larger wheel, that his fingers were caught as soon as the wheels began to revolve.  That he did so while Reynolds was engaged on the other side of the machine in clinching the nail at that end, and that owing to the intervention of the body of the machine between them, neither could see the respective positions of the hands and body of the other.  That Reynolds was at the end of the machine, where it was operated by the treadle, and as no one else was there it may be inferred that he started the machine, and that he did so without giving any warning to Walter that he intended to do so; while evidence also tended to prove that when the machine started Reynolds did not know, nor had he any reason to believe that the boy's hand was on or near the cogwheels, as there was no real necessity for his hand being in that position, or in any position of danger, in order to hold up the end of the strip in position, while the nails were being clinched.  The danger to the plaintiff from the movement of these cogwheels was manifest, and could be and was just as well appreciated by him as it could have been by the most skilled mechanic.  He either thoughtlessly placed his hand between these wheels, or did so on the assumption that the machine would not be put in motion, until after Reynolds had clinched the nail at his (plaintiff's) end of the machine, of which fact, however, he had no assurance.  Conceding, then, that Reynolds started the machine, yet, if under the circumstances it can be said that Reynolds, without any notice of the dangerous position in which the plaintiff's hand was, was guilty of negligence in starting the machine without giving plaintiff any notice of his intention to do so, so also it must be said that the plaintiff

was guilty of negligence in placing his hand in that dangerous position, without any notice of that fact to Reynolds, and his injury being the immediate and direct result of these two concurring acts of negligence, no recovery in his behalf can be had therefor against his employers, the Meskers. But eliminating his own negligence from the case, and attributing the injury solely to the negligence of Reynolds, still the same result must follow, as the relation between Reynolds and him was simply that of fellow-servants of the same master, under the control and supervision of Niehaus, the same foreman or superintendent of that master, and engaged in the same work, on one and the same machine of that master, the only difference in grade between them being such as arose from their own personalities and the nature of the particular part of the work which each performed. Reynolds was an adult, and operated the machine, work for which he was competent and suitable. The plaintiff was a boy, and assisted or helped him, work for which he was competent and suitable; and whatever difference of opinion may exist on this vexed question, there can be no doubt that under any rule that has hitherto received the sanction of this court, these two must be held to be fellow-servants. [Hawk v. McLeod Lumber Co., 166 Mo. 121; Grattis v. Railroad, 153 Mo. 380; Schaub v. Railroad, 106 Mo. 74, and cases cited.] And being fellow-servants, their employer can not be held to answer for an injury to one of them, caused by the negligence of the other. So in any view of the case, the circuit court committed no error in sustaining the demurrer to the evidence, and in refusing to set aside the nonsuit, and its judgment is affirmed. All concur.