GODFREY, Respondent, v. ST. LOUIS TRANSIT
COMPANY, Appellant.

St. Louis Court of Appeals, May 10, 1904.

**MASTER AND SERVANT: Negligence: Fellow-Servant: Safe Place to Work.** Plaintiff, a conductor for defendant, a street railway company in · charge of one of its cars, was thrown through the window of his car by turning a sharp curve at an early hour in the morning before it was light enough to see the curve. A cluster of lights had been placed near the curve for the convenience of passengers getting on and off, and the motorman in charge of the car had been accustomed sometimes to determine when he was approaching the curve by means of such lights. The lights were usually turned off at 2 o'clock in the morning, as the gen-

eral orders required, though sometimes they were left burning until morning. On the morning of the accident, about 5:30 o'clock, the lights were not burning and the motorman mistook other lights in the distance for them and ran upon the curve before he knew he was approaching it, thus causing the accident. *Held*, in an action by the conductor against the street railway company for the injuries incurred by him, the fellow-servant statute does not protect employees of street railway companies, and the defendant would not be liable for any negligence on the part of the motorman. *Held*, further, the company was not negligent in allowing the lights to be out at the time of the accident, because it was the custom to put them out at two o'clock in the morning and the motorman had no right to expect them to be shining. *Held*, further, the company was not negligent in failing to keep the curve lighted, in the absence of testimony that railway companies usually put lights at curves of their tracks, or that reasonable care demanded such a precaution.

Appeal from St. Louis City Circuit Court.—*Hon. J. W. McElhinney*, Judge.

Action for personal injuries. Appeal from judgment in favor of plaintiff.

REVERSED.

*Boyle, Priest & Lehmann* and *Kiskaddon & Matthews* for appellant.

(1) Plaintiff can not recover on the ground that his fellow-servant was negligent. He can recover, if at all, on the ground solely that defendant was negligent in failing to maintain a light at the point where the accident occurred. That is the only negligence alleged. Plaintiff can not allege one act of negligence and recover on another not alleged. This is an elementary principle of law. McCormick v. Railroad, 154 Mo. 216; Conrad Grocery Company v. Railroad, 89 Mo. App. 534. (2) The court ought to have sustained the demurrer to the evidence at the close of plaintiff's case, or at the close of the whole case. Jackson v. Rail-

road, 104 Mo. 448; Fugler v. Bothe, 117 Mo. 502; Aldridge v. Furnace Co., 78 Mo. 559; Devitt v. Railroad, 50 Mo. 302; Schaub v. Railroad, 106 Mo. 74; Bohn v. Railroad, 106 Mo. 433; Bradley v. Railroad, 138 Mo. 293; Lucey v. Han. Oil Co., 129 Mo. 32; Glover v. K. C. Bolt & Nut Co., 153 Mo. 327; Minnier v. Railroad, 167 Mo. 113; Beckmann v. Anheuser, 98 Mo. App. 560; Adams v. McCormick, 95 Mo. App. 111; Steinhauser v. Spraul, 127 Mo. 541; Thomas v. Railroad, 109 Mo. 187; Ring v. Railroad, 112 Mo. 220.

*A. R. Taylor* and *R. C. Shackelford* for respondent.

We think the law is just as well settled that if the negligence of the master joins with the negligence of a fellow-servant in causing the injury to a servant the master is liable.   The authorities of this State are in accord with the universal law on this question.   Young v. Shickle, 103 Mo. 328; Bluedorn v. Railroad, 108 Mo. 448; Browning v. Railroad, 124 Mo. 70; Ellingson v. Railroad, 60 Mo. App. 686; Innis v. Brewing Co., 69 Mo. App. 28.

GOODE, J.—Action for personal injuries sustained by the plaintiff December 8, 1902, by being hurled through a window of a trolley car to the ground. Plaintiff was the conductor of the car, which ran on the Clayton division of the St. Louis Transit Company's line.   Clayton is the county-seat of St. Louis county and eight or ten miles from the city of St. Louis.   The car started from its station or shed at Forsyth Junction at 5:45 in the morning of the day of the accident, in charge of the plaintiff as conductor, and Philip Sheridan as motorman.   The morning was dark and though the car was provided with an overhead electric headlight of sixteen candle power, there is testimony that it illuminated the track for not more than twelve or fifteen feet ahead. Where the track crosses Skinker Road, just inside the

limits of the city of St. Louis, it veers southward around a sharp bend, and cars had run off the track there previously and in daylight. Two months or more before the accident, a cluster of four or five electric lights had been placed at that curve. There is testimony that this was done at the request and for the convenience of persons working on the World's Fair Grounds, who got on and off the cars there. These lights were turned on at dusk and usually, but not invariably, extinguished at two o'clock in the morning, pursuant to an order that had been issued to the operatives of night cars on the route; but the operatives of the car in question knew nothing of the order so far as the proof shows. On the morning in question at the time of accident, the lights were not shining. The petition charges that the curve was dangerous to cars when running at full speed and, therefore, the defendant had provided the lights as a beacon to its car operatives in order to warn them of the approach of a car to the curve and the need of reducing speed so as to avoid a shock. The specific negligence alleged as the basis of recovery is that on the morning of the accident the defendant and its agents and servants charged with keeping the track in repair and said place lighted, neglected to have said lights shining, thereby rendering it impossible for the motorman of the car in question to know the proximity of the curve as he approached and ran on it. When the curve was reached the car was running at a speed of from ten to fifteen miles an hour and the result of the reduction of speed consequent on striking the curve, was to hurl both the motorman and the conductor from the car and injure them. Plaintiff was thrown through the rear window on the right side to the ground and rendered unconscious for five minutes. Two of his ribs were broken. Three or four persons were on the car at the time and other persons were near, all of whom testified the lights were out. The motorman swore he was misled by a light which shone through a window of the electric

powerhouse at the Administration building on the World's Fair Grounds; that he mistook that light for the cluster at the curve, and, as it was further away, did not suppose he was near the curve and hence did not reduce speed. When the clustered lights were shining he could see three blocks or nine hundred feet ahead, he said, but could not see more than ten or fifteen feet that morning. Other testimony went to show the headlight enabled him to see the track one hundred or one hundred and fifty feet ahead, and that a car running at twelve miles an hour could be checked in eighty feet. In passing around the curve, safety required the speed to be reduced to not more than two and one-half miles an hour. The motorman and conductor of the car in question had been running over that route for a year or more and were familiar with it.

The trial court instructed the jury on the theory that if the negligence of the motorman was the sole cause of the accident, the plaintiff could not recover, as the two were fellow-servants; but that if the jury found the accident was due to the absence of a light and a consequent inability of the carmen to see the curve in time to slacken speed, and that the defendant and its agents charged with the duty of keeping its tracks in a safe condition, were guilty of want of ordinary care in failing to have lights burning at or near the curve, so as to enable the car crew to realize its proximity and reduce speed, the defendant was liable.

There was a verdict for the plaintiff for $1,000, judgment accordingly and defendant appealed.

These distinct theories of a possible liability on the part of the defendant demand attention: First, that it negligently permitted the lamps which were usually burning at night to be out when the accident happened, thereby misleading the motorman; second, that it neglected to keep a light burning at the curve, a duty incumbent on it continuously during hours of darkness.

In deciding the case, as any other based on negli-

gence, we must have regard to the particular negligence averred for a cause of action; which is that the clustered lamps at the curve were not burning at the hour plaintiff's car approached, and the darkness rendered it impossible for the motorman to ascertain when he drew near the spot. Though there is evidence in the case to show this curve was dangerous day or night unless rounded at a slow speed, the petition does not count on an improper construction of the track in making the curve too sharp, but on failure to have the lights burning which had been placed there a month or two before. The accident, as accounted for by the motorman, was due entirely to his mistaking the light shining from the power house beyond the curve for the light of the lamps at the curve, in consequence of which mistake he supposed the curve was a hundred yards or so away when he ran on it. Here is his account of the affair:

"Q. Weren't all those lights lit that morning when you got there? A. Well, I thought they were before I got there. When I struck the curve I found they weren't.

"Q. Well, what did you see that made you think they were lit? A. I saw a light just beyond there, about three-quarters of a block I should judge.

"Q. Now, when did you first realize that that light beyond was not the light at the curve? A. Well, when I found myself lying on the ground.

"Q. With those lights lighted as you approached that curve from the east, how far could you detect the curve? A. Well, you can see at least, plainly, three blocks.

"Q. What is the effect upon a car in running into a curve like that at the speed of ten miles an hour? A. Well, it proved to be in that instance that the car hit a rock.

"Q. What effect has that? A. It gives it a great jar and jolt—a great shaking up sideways." . . .

"Q. You could have noticed the absence of the light? A. No, sir.

"Q. On account of another light somewhere else? A. I suppose it was the light—I was positive that it was the light.

"Q. You were making for a light a quarter of a mile further on? A. I said maybe three-quarters of a block.

"Q. Do you know what that light was? A. I have learned since it was a light in a powerhouse there on a switch near the World's Fair.

"Q. That is the powerhouse up at the Administration building? A. I think so.

"Q. Well, isn't that about three or four blocks? A. I don't think so. It may be a block. I don't think it is over a block.

"Q. And had you ever noticed that light before? A. I don't remember of ever having noticed it.

"Q. You don't remember of ever having noticed it? A. No, sir.

"Q. That light was shining through a window was it? A. I suppose it was.

"Q. And you were just going for that light upon top of the hill? A. I was going for the light as I thought at the hill.

"Q. But you were going for the light upon top of the hill? A. I was going for the light at the curve as I thought.

"Q. Well, the light that you were going for was on a pole—how high was that pole? A. The pole was quite high, but the light wasn't so high. I don't remember the exact height of the light."

The motorman evidently labored under two mistakes: one was that the lights at the curve were kept burning all night and that he might depend on them to show where the curve was as he approached it that morning. The other mistake was in believing the powerhouse light to be the curve lights.

The uncontradicted evidence is that the curve lights were turned out at two o'clock in the morning and were never burning later than that hour unless the crew of the last incoming car carelessly or disobediently failed to extinguish them as the company's rule required. As they did not burn in the morning, they could not be a beacon at that hour for motormen, whether they were intended to serve that purpose during the fore part of the night or not. The proof is that they were not intended as a beacon at any time, but for the convenience of passengers who got on and off at that point. But they necessarily became a beacon for car crews during the hours of the night they were kept burning, and the company would be liable for any harm resulting from neglect to have them shining when crews might reasonably expect them to be. The accident was not caused by the motorman's inability to detect the proximity of the curve, in time to slacken speed, because the place was unlighted; but by his belief that the electric lamps were always kept burning at that hour of the morning, when, in fact, they were not. This erroneous belief led him to depend on the light of those lamps, to neglect attention to other objects which would have warned him of his near approach to the curve and to be deceived by the light in the powerhouse; a natural illusion; for that light was west of the cluster of lamps at the curve and in the same line of vision. Owing to those mistakes the motorman did not reduce the speed of his car before it entered the curve. Now the defendant company is not responsible for the motorman's mistakes unless by careless conduct, it, in some measure, induced them. Blame might be laid at the company's door if the curve lamps were ordinarily kept burning in the morning before daylight, but were out that morning; for if the rule or custom was to have them burning, the motorman could have depended on them to notify him of the proximity of the curve. The company in such case would have been culpable unless the extinguishment of the lamps

was due to some cause not preventable by due care. But the custom was for the lights to be put out after two o'clock at night; and hence the motorman had no right to expect them to be shining, and the company in no sense induced his mistaken belief that they were. It was his duty to watch the track ahead of him and the objects near it to learn his whereabouts and the proximity of the curve, as he had done for a year before the lights were placed. The sole proximate cause of plaintiff's injury was the motorman's mistakes. Our fellow-servant statute does not protect employees of street railway companies. Sams v. Railroad, 174 Mo. 53.

As to the instructions: they proceeded on the hypothesis that the jury might find the company did not exercise ordinary care to maintain a reasonably safe track unless it provided for lighting the curve; that is, for keeping a light burning there constantly in the nighttime to enable carmen to discern the curve. Independently of possible negligence in failing to have a light burning when the accident occurred that was customarily burning at that hour, the jury were authorized to find that reasonable care on the part of the company for the safety of its employees, required a light to be maintained at the curve during all hours of darkness. If it was under such a duty, it is dubious if neglecting to fulfill it can be fairly said, in view of the testimony, to have been the proximate cause of the casualty. That part of the track had been travelled by the motorman of the car in question for a year or more while no light was there, without an accident; and, as pointed out above, this accident was precipitated by his supposing a light was there when none was and in consequence mentally locating at that point a light that was shining at a point beyond. But we consider the proposition that the jury might find the company guilty of carelessness in failing to light the curve, untenable. There is no proof that railway companies customarily put lights at curves of their tracks, or that reasonable care demands such a

precaution. And, in fact, we know it is not the custom to light those places. Railway companies are under legal obligations to employees to maintain a reasonably safe track and to furnish reasonably safe cars and other appliances. But to select an act like lighting the curved portions of track, which is only one of many precautions that may be adopted to make a track safe, and instruct a jury that they may find a railway company was negligent in failing to perform such an act, when there is no proof that it is the usage of well-managed railway companies, or indispensable to safety, is erroneous. Bohn v. Railway, 106 Mo. 429; Minnier v. Railroad, 167 Mo. 99. As well tell the jury in the present case they might find the curve was too acute for safety (which was likely its fault, if it was faulty) without proof to show the fact; or single out any other possible defect. Interpreting the testimony before us fairly, if we leave out of consideration the illusion engendered in the motorman's mind regarding the powerhouse light by his mistaken belief that the lights at the curve were kept burning all night, the only negligence the company could be accused of as a proximate cause of the accident, was failure to furnish a headlight powerful enough to illuminate the track as far as was necessary. It is matter of common knowledge that headlights are the means provided to enable motormen and engineers to detect curves and other obstacles on railway tracks. It is known, too, that some headlights are dim and others brilliant and sufficiently far-reaching to show the course of the track or an object, in time to regulate speed, and that with an adequate headlight, lights along the track are unnecessary for the safety of a car or train crew. The headlight on the car in question was too dim for its purpose, according to the motorman's testimony; but no negligence was predicated on that ground. We hold there was no proof to support a finding by the jury that it was the duty of the defendant to keep lights burning at the

curve where the shock occurred, or that it was negligent in omitting to do so.

The judgment is reversed. *Bland, P. J.*, and *Reyburn, J.*, concur.