FRED GRACZAK v. THE CITY OF ST. LOUIS, a Municipal Corporation, Appellant.—No. 39958.—202 S. W. (2d) 775.

Division Two, April 21, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, June 9, 1947.

*George L. Stemmler*, City Counselor, *Harry R. Stocker*, Associate City Counselor, and *Kenneth W. Grattendick*, Assistant City Counselor, for appellant.

*Everett Hullverson* for respondent; *Orville Richardson* of counsel.

 BOHLING, C.—The City of St. Louis appeals from a judgment of $13,000 in favor of Fred Graczak for personal injuries sustained while in defendant's employ. Defendant contends the fellow servant rule precludes recovery; that plaintiff was contributorily negligent as a matter of law; that plaintiff's main instruction was erroneous, and that the damages are excessive.

Plaintiff, a blacksmith, and Frank Boubek, his helper, had worked together for over three years as employees of defendant in its blacksmith shop at the Baden pumping station. They were fully qualified men. They had been punching holes in each end of some iron links (28 inches long, 3/8th inches thick and 2-3/4th inches wide) to be used on movable water screens at the Missouri river. A steam hammer and a die were used. The hammer was a large heavy machine, with a heavy anvil resting on a base, and a hammer above, capable of striking a 2-foot or longer blow with terrific force, "like a shot out of a cannon." It was operated by two levers at the side of the machine, which controlled the length and force of the blow. The die box was about 8 inches square, weighed about 60 pounds, had a slot or guide for the punch, and an arm or template on which the link would be placed to insert it in the die box. There was evidence that in addition to oral signals, signals would be given by the hand and head in doing the work; the holding out the right hand signaled a stop or halt, while a nod of the head was the signal for the hammer to punch the hole. Boubek would dip the steel punch, about 4-1/2 inches long and 7/8th of an inch in diameter, in white lead and oil and then work it up and down in the die box to prepare it, including the part that would be beneath the link after it was inserted in the die box. The white lead preserved the tool, aided in cutting the hole cleanly and without burrs on the underside, and thus was used about every tenth punch and whenever the die was changed. Boubek, after preparing the punch and die box with white lead and resting the punch on the link and inserting it in the guide, would take his position at the levers at the side of the machine. Plaintiff would hold the box and link in proper place by the die box arm, using both hands and standing in front of the hammer. The two men would be facing in each other's direction and, say, 3 feet apart. Upon plaintiff's signal, Boubek would operate the levers and the hammer would drive the punch through the link and drop it and the punched out slug into the die box.

On the afternoon of August 30, 1944, plaintiff and Boubek had only a few more links to finish their work on something over 300 links. A new die box was on the anvil under the hammer, and the punch had been inserted. The men were at their stations. Plaintiff noticed there was no white lead on the punch. He testified he said: "Halt, we have got to put some white lead on this thing here," and put out his right hand, signaling a halt. Plaintiff reached in with his left hand

to take the plunger out when the hammer came down upon his hand, injuring it. Plaintiff testified Boubek could see everything that was going on. Boubek testified that, in his usual position at the levers, he could not see plaintiff's left hand; that he did not hear or see any signal given by plaintiff; that he took a practice swing to get his distance with the hammer, which, according to the record and as stated in plaintiff's brief, was unusual, and thus caused plaintiff's injury. The blow did not punch a hole in the link.

Plaintiff's trial theory was that defendant breached its nondelegable duty to provide plaintiff with a reasonably safe place to work in that Boubek's failure to heed and to give customary signals and warnings was defendant's negligence. He says, should he be in error, that the "fellow servant rule" should be. repudiated as contrary to the existing public policy of the State of Missouri.

█ Defendant, invoking the "fellow servant rule," contends Boubek's negligence was merely incidental to the work itself, an operative detail, and had no direct relation to the safety of the place of work.

The case was tried upon the theory the men were fellow servants. See Livengood v. Joplin-Galena Cons. L. & Z. Co., 179 Mo. 229, 237. 77 S. W. 1077, 1079(1). There is no dispute with respect to the nondelegable duty resting upon employers to furnish employees with a safe place to work, including safe and █ suitable tools, machinery and appliances, and maintaining them so. Employers are not insurers of the safety of employees. Liability springs not from dangers attending the work or from the fact of injury, but from negligence chargeable to the employer. So far as material to the instant case the fellow servant rule may be stated to absolve an employer from liability to an employee for injuries occasioned by the negligence, as distinguished from the incompetence, of another employee engaged in a common task except in those instances wherein the negligence relates to some nondelegable duty of the employer. 35 Am. Jur. p. 760, Secs. 334, 339; 39 C. J. p. 537, Sec. 644; 2 Restatement, Agency, Sec. 474 et seq. Greenan v. Emerson Elec. Mfg. Co., 354 Mo. 781, 195, 191 S. W. (2d) 646, 650[4].

" '. . . In other words, the rule that the master is bound to see that *the environment* in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees.' " Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 218, 85 S. W. 2d 527, 535, quoting 3 Labatt's Master & Servant, Sec. 903.

" . . . the master, while, responsible for intrinsic defects in the instrumentalities, which would not have existed if the servants intrusted with the functions of supplying or maintaining them had exercised proper care, cannot be held liable for injuries caused by the manner in which the servants use those instrumentalities for the

performance of their work. . : . Or, in other words, where an appliance is reasonably safe to operate, and its operation necessarily rests upon the care, intelligence and fidelity of the fellow servants of the person injured, the master will not be held responsible for an accident the nature of which indicates that it must have been due to the manner in which the appliance was operated by one of those workmen." 4 Labatt, Sec. 1520; also Sec. 1516. 35 Am. Jur. p. 763, Sec. 335, p. 784, Secs. 359, 360, 39 C. J. p. 618, Sec. 725.

And on warnings: "The general principle that the master's duty to provide a safe place to work is not deemed to have been violated where the unsafety is caused solely by the acts of coservants in carrying out the details of the work clearly involves the corollary that the master is not chargeable with the failure of those servants to warn each other as to the existence of dangerous conditions which have already supervened." 4 Labatt, Sec. 1531. And: "Frequent attempts have been made to bring the negligence of servants deputed to give signals within the scope of the principle that the duty to maintain a safe place of work is nondelegable. But this contention is rejected, [except in Washington . . .]." 4 Labatt, Sec. 1537. See 35 Am. Jur. 781, Sec. 356; 39 C. J. 632, Secs. 743, 749.

The Missouri cases are in accord.

In Richardson v. Mesker, 171 Mo. 666, 674, 72 S. W. 506, 507, plaintiff's fingers were crushed between cogwheels when a die machine, used to shape galvanized iron, was started without warning after having been stopped to make it function properly. Plaintiff was holding one end of a galvanized iron strip and had placed one of his hands on the cogwheel in front of him to brace himself. The court considered plaintiff contributorily negligent as a matter of law and also that the employer was not liable for the negligence of plaintiff's fellow employee in failing to warn of the intention to start the machine.

State ex rel. Kroger Grocery & Baking Co. v. Haid, 323 Mo. 9, 13(II), 18 S. W. (2d) 478, 480(II), followed Richardson v. Mesker, supra, in quashing a court of appeals' opinion. A crew was unloading a freight car under instructions to hurry. The foreman ordered plaintiff and another to take a hand truck to an elevator; the fellow servant was to push the hand truck with an electric truck while plaintiff was to guide. As plaintiff was taking hold of the guiding bar, the fellow servant, without warning, brought the electric truck against the hand truck "with a crash—fast," causing it to move forward and injure the plaintiff. This court stated the court of appeals' ruling that the failure of the fellow servant to warn was the negligence of the master in the performance of a nondelegable duty would destroy the fellow servant rule; that the master was not required to be present to guard against each act, although negligent, of a fellow servant, and quashed the contrary holding.

In Burge v. American C. & F. Co. (Mo. App.), 274 S. W. 842, 844 [2, 3], plaintiff, working with a reamer, was about to place the bit in a hole to be reamed when the shaft in his grasp started revolving, caught his glove, and twisted his arm, injuring it. He knew the danger of holding the shaft and it was customary for him to signal for the power to be turned on. He gave no signal to start. In reversing a judgment for the plaintiff, the court, with respect to the duty to warn, considered that the master was not liable for the failure of a servant to give a warning to fellow servants of every detail of manual labor which might endanger them.

Steffen v. Mayer, 96 Mo. 420, 423, 9 S. W. 630, 631, states: "Where a suitable machine is put in the hands of a competent servant, he must exercise his judgment in the use of it; and so here it was the duty of the servant to guard against accidents incident to the business in which they were engaged, and which were open to their observation." Among other cases are: English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 439, 122 S. W. 747; Ryan v. McCully, 123 Mo. 636, 27 S. W. 533; McCall v. Nugent D. G. Co. (Mo.), 236 S. W. 324, 327 [6]; Thompson v. Kansas City (Mo. App.), 153 S. W. 2d 127; Godfrey v. St. Louis Transit Co., 107 Mo. App. 193, 81 S. W. 1230, 1232; Ring v. Missouri Pacific Ry. Co., 112 Mo. 220, 231, 20 S. W. 436.

Plaintiff cites many cases. Some more prominently stressed and illustrative of plaintiff's position are:

Gettys v. American C. & F. Co., 322 Mo. 787, 796, 799, 16 S. W. 2d 85, 88 [3], 89 [10, 11], is said to be squarely in point. Defendant manufactured steel box cars. Plaintiff was driving rivets with a pneumatic hammer at one end of the car and one Jackson was reaming holes in a thin steel floor plate at the other end, each progressing towards the center. The hammer made considerable noise; the reamer was practically noiseless. The operation of the reamer in close proximity to one unaware of its presence was dangerous. Plaintiff had complained to Jackson of his actions in operating it and to the foreman. He was told to continue as the job was rush work and Jackson would be cautioned. The case, with respect to the duty of the master to exercise care to maintain a safe place to work, is to the effect that the duty to warn is a nondelegable duty of the master where there is a practice, whether the result of rule or custom, to warn the servant of a transitory danger making the place of work perilous; and the failure of the reamer to warn the riveter, to whom the duty was entrusted was not the act of a fellow servant. The next three cases are cited as authority.

In Koerner v. St. Louis Car Co., 209 Mo. 141, 151, 157, 107 S. W. 481, 483 (1), 485 (2), 17 L. R. A. (N. S.) 292, defendant manufactured steel cars, storing them on tracks in its yards until ready for delivery. Plaintiff was one of defendant's painters and a new car, which plain-

tiff was painting from a scaffold or trestle, was suddenly moved by defendant's switch crew without warning, causing plaintiff to fall and sustain injuries. The court held that painters and switchmen were not fellow servants and the fellow servant rule not being applicable, defendant was liable for the switchman's negligence. The court also considered that the facts of the case established a breach of the non-delegable duty to provide and maintain a reasonably safe place to work in that the movement of the car without warning plaintiff caused the place to change from a safe place to a dangerous place to work, and the switchman's failure was defendant's failure.

In Johnson v. Waverly B. & C. Co., 276 Mo. 42, 50(I), 205 S. W. 615, 616(I), plaintiff, a "trimmer," would stand on a car and separate stone et cetera from coal as it passed into the car. There was a rule to warn persons in the vicinity of cars to be switched. While at work plaintiff was injured by cars being pushed without warning against a car he was trimming. The facts presented a situation similar to that of the Koerner case and a like result was reached.

Bender v. Kroger Grocery & Baking Co., 310 Mo. 488, 496, 276 S. W. 405, 407[3], is different on the facts. A servant in performing an independent act ordered by the foreman, negligently caused the place where plaintiff was working, inside a trailer, to become unsafe by its tipping when he detached the tractor and failed to drop a support furnished and available for the purpose of keeping the trailer level when the tractor was detached.

In Johnson v. American C. & F. Co. (Mo.), 259 S. W. 442, plaintiff's right hand was caught and crushed in a large hydraulic press. The foreman of plaintiff's crew operated the press. The press provided for a drop from 2 to 2-1/2 feet; but the foreman had the habit of stopping it at from 3 to 6 inches and starting the press before the men removed their hands to speed up the work. Numerous complaints of this were made. Plaintiff's injury was the result of such an act. The court points out that case is not one of a "single negligent act of a servant" but of a "habit" of the foreman, and held, first, that the foreman was not a fellow servant, and that defendant breached its duty to have the place of work reasonably safe for a servant directed to work there by its foreman. With respect to the master's failure to correct the negligent method of the foreman in doing the work, the foreman's "habit" caused a safe place of work to be unsafe and, hence, the master was liable even though the foreman be considered a fellow servant. McCall v. Nugent Dry Goods Co. (Mo.), 236 S. W. 324, 328, is cited, and states that if a method of work be customary, it is attributable to the master; but if in an individual instance something differs from the customary method of doing the work, then the act is the act of the employee.

Cases where a necessary change in the mechanism or the repair of a machine causes one to take a dangerous position in performing

the temporary task if the machine be started differ from the instant case. Cook v. Atlas Portland Cement Co., 214 Mo. App. 596, 263 S. W. 1027; Bright v. St. Louis V. & F. B. Co. (Mo. App.), 201 S. W. 641; Carter v. Wolff (Mo. App.), 296 S. W. 187. In each the master has legal knowledge of the full situation and the attending danger; and the place of work, reasonably safe when undertaken, is made dangerous by an independent act and not an operating detail of the work. It has been observed (see Kelso v. Ross Const. Co., 337 Mo. l. c. 216, 85 S. W. 2d l. c. 535) that a locomotive is a piece of machinery so far as the engineer and fireman are concerned, but just as clearly something that may make the place of work unsafe as regards a trackman or other employee of a railroad or third party whose work is not concerned with the detailed movement of the locomotive. Enloe v. American C. & F. Co., 240 Mo. 443, 144 S. W. 852; Koerner v. St. Louis C. Co., and Johnson v. Waverly B. & C. Co., supra, are cases involving this feature and distinguishable in part thereby. Plaintiff and his helper, Boubek, were in complete control of the operation of the steam hammer in the instant case.

Plaintiff states it was defendant's duty to provide and enforce a system of signals for the work, but that defendant's failure to do so is of no moment because of the practice and custom of defendant's employees to operate by signals. Plaintiff's case did not involve that theory of liability. The extent of the employer's duty in this respect is stated in 4 Labatt, 4585, Sec. 1538, as follows: "In any case in which the master has issued directions for the guidance of his servants, respecting the manner in which the work is to be done, whether those directions take the shape of general rules or of specific orders *ad hanc vicem*, any delinquencies of which employees may be guilty in regard to the mere details of the work to which those orders or rules relate are deemed to be committed by them as mere servants." See also 39 C. J. 635, Sec. 745; 35 Am. Jur. 783, Sec. 357, n. 7.

In plaintiff's authorities most like the instant case an independent act of another employee not connected with the detail of the work under performance by the plaintiff made the place of work unsafe and caused the injury, with the exception of ▮▮▮ Johnson v. American C. & F. Co., supra, where the habitual method of work resorted to by defendant's foreman caused an ordinarily safe place to be unsafe, the duty resting on the master to correct the unsafe method of work. In the instant case the competency and method of work by Boubek is not questioned. All considered him competent and able. The steam hammer was in proper condition. Plaintiff's injury was not the result of any fault of plan, or construction, or defect, or lack of repair, or want of safety in defendant's place of work or the machinery used therefor, or in the manner ordinarily used. Plaintiff's injury is attributable to a danger incidental to the performance of his duties, the negligence of a competent fellow employee in an operative detail

of the work they were engaged in at the time. It is an instance wherein the fellow servant rule applies and precludes recovery.

Giving consideration, among others, to the Federal Employers' Liability acts (U. S. C. A. Tit. 45), the Missouri Workmen's Compensation law (Ch. 29, Secs. 3689-3766, R. S. 1939), and acts abolishing the fellow servant rule with respect to employees working in mines (Secs. 3672-3674, Id.) and on the railroads (Secs. 3652, 3665-3668, Id.), much may be said in support of plaintiff's position that the fellow servant rule is out of harmony with the public policy of today. (Consult 4 Labatt, pp. 4024-4034; 1 Shearm. & Redf., Negligence, 4th Ed., p. 303; Dixon v. Rankin, 14 Sc. Sess. Cas. (Ct. of Sess.) 2d series 420, 426). Its origin and foundation may be found stated in different works. (See 35 Am. Jur. 764, Sec. 336; 39 C. J. 538, Secs. 644, 645; Burdick, Torts (1926), Sec. 171 et seq.; Bohlen, Studies, Torts (1926), 459 et seq.; Pollock, Torts (6th Ed.), 95 et seq.). It is mentioned in McDermott v. Pacific Rd. Co., 30 Mo. 115. However, plaintiff's authorities recognize that the only body having lawful power to abrogate the rule is the legislatures. (4 Labatt, p. 4031.) Mr. Justice Holmes in Beutler v. Grand Trunk Ry. Co., 224 U. S. 85, 88, 22 S. Ct. 402, 56 L. Ed. 679, said: "The doctrine as to fellow-servants may be, as it has been called, a bad exception to a bad rule, but it is established, and it is not open to courts to do away with it upon their personal notions of what is expedient." These observations are apt here in view of the fact that our General Assembly has seen fit to abrogate the rule with respect to employees engaged in certain enterprises without abrogating the rule in its entirety. The point is ruled against plaintiff.

Plaintiff's unfortunate injury is to be regretted. Situations of a like nature with their attending circumstances exerted their influence in the passage and approval of the Workmen's Compensation law. Our duty is to apply the existing principles of law to the facts of individual cases. To sustain plaintiff under the instant facts, as indicated in State ex rel. v. Haid, supra, in effect would destroy the fellow servant rule. The cases treating of a detail of the work being performed by the injured servant do not sustain plaintiff's contentions.

The judgment is reversed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.