RICHARD BEQUETTE, Respondent, v. PITTSBURGH PLATE GLASS COMPANY et al., Defendants, PITTSBURGH PLATE GLASS COMPANY, Appellant.

St. Louis Court of Appeals.  Opinion Filed January 7, 1919.

1. **MASTER AND SERVANT: Injuries to Servant: Duty of Master to Keep Safe Place to Work.** Although the work of repairing tracks was being done by plaintiff's employer upon premises leased to its codefendant, that did not relieve it from whatever measure of duty it lawfully owed to plaintiff in respect to keeping safe the place where plaintiff was required to work at the time of his injury.

2. ———: ———: ———.  Where plaintiff, in obeying the command of his foreman directing the work of repairing tracks, was required to place himself in a position between the track upon which he was working, and a cable used to haul cars which lay a short distance behind him, *held*, that it was the duty of the foreman to exercise ordinary care to keep the place reasonably safe while plaintiff was thus required to occupy it.

3. ———: ———: ———: Nondelegable.  Even though the engineer of the lessee, codefendant, was guilty of negligence, the duty of plaintiff's employer to exercise ordinary care to keep safe the place where plaintiff was required to work, was a continuing duty, and it, through its foreman, was not entitled to wholly rely upon the employees of its codefendant to see that plaintiff received a warning, and thus shift to others the nondelegable duty which it owed plaintiff in respect to providing a safe place to work and keeping that place safe.

4. ———: ———: Evidence: Question for the Jury.  In such action, *held*, as to whether the foreman of plaintiff's employer exercised ordinary care in respect to warning plaintiff, etc., was a question for the jury.

5. **PLEADING: Admissions: What Constitutes.** An allegation in the petition to the effect that plaintiff's foreman was not warned, *held*, that such allegation constitutes no more than an admission that the foreman received or heard no warning.

6. **MASTER AND SERVANT: Injuries to Servant: Contributory Negligence.** Where the servant was obeying an express command of the master, through its foreman, and was engaged intently upon the work in hand, and his duties required that he watch such work, a task he could not well perform and at the same time

watch the movements of other employees, etc., he cannot be convicted of contributory negligence, as a matter of law; in failing to hear a warning, if one was shouted; his opportunity for discovering that the danger was imminent not being equal with that of the foreman, who was not performing manual labor, but was standing a few feet from plaintiff directing the work.

7. ———: ———: **Evidence.** Admission of evidence adduced by plaintiff regarding the custom of such foreman to warn his men of danger, etc., *held* not prejudicial error.

## Appeal from the Circuit Court of the City of St. Louis. —*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Holland, Rutledge & Lashly* for appellant.

(1) The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the testimony.     (a) Because the respondent is conclusively bound by the allegations of his petition and cannot recover upon a theory different from that embodied in his petition and directly contrary to the allegations of his petition.     State v. Brooks, 99 Mo. 137; Chitty v. Railroad, 164 Mo. 75; Hensler v. Stix, 108 Mo. 238; Mueller v. La Belle, 109 Mo. App. 506; Cheltz v. Railroad, 148 Mo. 64; Yarnell v. Railroad, 113 Mo. 570; Waldner v. Railroad, 71 Mo. 514; Melvin v. Railroad, 89 Mo. 106; Woods v. Campbell, 110 Mo. 572; Price v. Railroad, 72 Mo. 414; Standard Milling Co. v. Transit Co., 122 Mo. 277; Hite v. Railroad, 130 Mo. 136; Mason v. Railroad, 75 Mo. App. 10.     (b) Because under the testimony of respondent's own witnesses he is not entitled to recover.     (c) Because under the testimony respondent's foreman was in no better position to discover that the cable was not to be moved than was the respondent, and said foreman did not know and could not, by the exercise of ordinary care, have known that the said cable was about to be moved.     Troth v. Norcross, 111 Mo. 634; Robinson v. St. Johnsbury Railroad Co., 88 Vt. 129.     Respondent's foreman, while working on premises of a third person,

was under no obligation to do more than a man of ordinary prudence would do, and was not bound to anticipate the unusual or unexpected, and particularly was not bound to anticipate negligence on the part of a third person. Miefert v. New Union Sand Co., American Brewing Ass'n v. Talbot, 141 Mo. 674; Fuchs v. City of St. Louis, 167 Mo. 620; Goodrich v. Railroad, 152 Mo. 222; Heysell v. Smith, 78 Mo. App. 39; Lohring v. Westlake Construction Co., 94 S. W. Rep. 747. Moreover, a custom, however well established, will not prevail as against the rights of the parties as established by law. Ober v. Carson's Exr., 62 Mo. 209; Kleekamp v. Meyer, 5 Mo. App. 444. (d) Because under the testimony the respondent and the rest of his crew were working within a few feet of each other, and if any warning had been given that his foreman could have heard, the plaintiff had the same opportunity to hear same. Both the plaintiff and his foreman had a right to rely upon the servants of the Sand Company's giving a warning and were not negligent in placing such reliance. Flori v. Dolph, 192 S. W. 948; Troth v. Norcross, 111 Mo. 634; Robinson v. St. Johnsbury Railroad Co., 88 Vt. 129. (e) Even if the testimony had shown that respondent's foreman received a warning and failed to transmit it, such failure on his part, if it constituted negligence, would not be negligence on the part of the vice-principal, but negligence on the part of a fellow servant. Rogers v. Schuele, 148 Mo. App. 52; English v. Shoe Co., 145 Mo. App. 439; Dickinson v. Jenkins, 144 Mo. App. 132; Fluman v. Bemis Bros., 141 S. W. 481. (2) The court erred in allowing respondent's witness John Keevin to testify, over the objection of the appellant, that when the section crew in question were working in the yards of the Pittsburgh Plate Glass Company, it was the custom of the foreman, when he saw an engine or car approaching, to warn the men under him to get off the track. The law is well settled that it is improper to show customs unless they prevailed under similar conditions. And in this case the conditions prevailing at the plant

of the Sand Company where the work was being done were entirely dissimilar from the work carried on in the railroad yards of the company. (3) The court erred in allowing the respondent's witness August Beckemeyer to testify, over the objection of appellant, that when the section crew in question were working in the yards of the Pittsburgh Plate Glass Company, it was the custom of the foreman, when he saw an engine or car approaching, to warn the men under him to get off the track. The law is well settled that it is improper to show customs unless they prevailed under similar conditions. And in this case the conditions prevailing at the plant of the Sand Company where the work was being done were entirely dissimilar from the work carried on in the railroad yards of the company. (4) The court erred in allowing respondent himself to testify, over the objection of appellant, that when the section crew in question were working in the yards of the Pittsburgh Plate Glass Company, it was the custom of the foreman, when he saw an engine or car approaching, to warn the men under him to get off the track. The law is well settled that it is improper to show customs unless they prevailed under similar conditions. And in this case the conditions prevailing at the plant of the Sand Company where the work was being done were entirely dissimilar from the work carried on in the railroad yards of the company. (5) The court erred in giving Instruction No. 1 at the instance of respondent. (a) Because it requires a finding that respondent's foreman, Keevin, could have discovered that the cable was about to be moved, when there was no testimony upon which to base such a finding. Stone v. Hunt, 114 Mo. 66; State v. Hope. 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; State v. Brown, 155 Mo. 680; Wilkerson v. Eilers, 114 Mo. 245. (b) Because it required a finding that it was the custom of the foreman to keep a lookout for and give plaintiff reasonable and timely warning, when there was no testimony of any such custom prevailing under conditions similar to those prevailing at the time in question. (c) Because

the said instruction incorrectly states the law to be that the respondent, under the circumstances in question, had a right to rely upon the foreman's keeping a lookout for him. (d) Because said instruction does not require a finding that it was the duty of respondent's foreman to keep a lookout for and warn the men of approaching dangers, but merely a finding that he was authorized so to do. (6) The court erred in refusing to give Instruction B at the instance of appellant. Where a petition contains certain charges of negligence and the testimony does not sustain or tend to sustain them, it is the duty of the trial court, when requested by the defendant, to instruct the jury that there is no testimony to sustain such charges and that the plaintiff cannot recover on such charges. Chrismer v. Bell Telephone Co., 194 Mo. 189. (7) The court erred in refusing to give Instruction D at the instance of appellant. (8) The court erred in refusing to give Instruction E at the instance of appellant. Chrismer v. Bell Telephone Co., 194 Mo. 189. (9) The court erred in refusing to give Instruction F at the instance of appellant. (10) The court erred in refusing to give Instruction G at the instance of appellant. The allegations of the plaintiff's petition are taken to be true as against plaintiff for the purposes of the case. He cannot recover on a contrary theory. State v. Brooks, 99 Mo. 137; Chitty v. Railroad, 148 Mo. 64; Hensler v. Stix, 108 Mo. 238; Mueller v. La Belle, 109 Mo. App. 506; Adulff v. Columbia Pretzel Co., Cheltz v. Railroad, 148 Mo. 64; Yarnell v. Railroad, 113 Mo. 570; Waldner v. Railroad, 71 Mo. 514; Melvin v. Railroad, 89 Mo. 106; Woods v. Campbell, 110 Mo. 572; Price v. Railroad, 72 Mo. 414; Standard Milling Co. v. Transit Co., 122 Mo. 277; Hite v. Railroad, 130 Mo. 136; Mason v. Railroad, 75 Mo. App. 10.

*Safford & Marsalek* for respondent.

(1) The court rightfully refused to give the peremptory instruction offered by defendant Pittsburgh Plate Glass Company at the close of all the evidence.

Jordan v. Transit Co., 202 Mo. 418; Gannon v. Gas Co., 145 Mo. 502, 511; Spaulding v. Railway Co., 129 Mo. App. 607; Grain Co. v. Railroad, 182 Mo. App. 339, 342; Morgan v. Sunflower Zinc Co., 199 S. W. 590, 592. Under the testimony in this case, plaintiff is entitled to judgment against Pittsburgh Plate Glass Company. (1) Every fact favorable to plaintiff which the evidence tends to prove, though but in the slightest degree, must be taken as admitted by an instruction in the nature of a demurrer to the evidence, and every inference arising from such facts in plaintiff's favor should be drawn. Hall v. Coal & Coke Co., 260 Mo. 351, 365; Maginnis v. Railroad, 268 Mo. 667, 675; Bender v. Railway Co., 137 Mo. 240; Moore v. Railway Co., 73 Mo. 439; Field v. Railway Co., 46 Mo. App. 449; Wilkerson v. Railway Co., 26 Mo. App. 144; Thornsberry v. Ry. Co., —Mo.—, 178 S. W. 197, 200. (2) Keevin was in the employ of Pittsburgh Plate Glass Company, and was authorized to instruct plaintiff where, when and how to perform his duties to Pittsburg Plate Glass Company, and it was his custom to keep a lookout for approaching danger while in charge of the crew of Pittsburgh Plate Glass Company repairing tracks, and to warn the crew, of which plaintiff was a member, of approaching danger, and Keevin instructed plaintiff in repairing the tracks of Pittsburg Plate Glass Company to assume the position he occupied when he was injured, and did not countermand the instruction, although it was his duty to do so by warning, for he could by the exercise of ordinary care have discovered that the cable was about to move and injure Bequette, and that by reason thereof the premises where Bequette was working were not reasonably safe, and his duty to countermand his instruction by warning is a non-delegable duty, and for his negligence in failing to perform such non-delegable duty of the master, under the circumstances, his master Pittsburgh Plate Glass Company, is liable. Johnson v. Coal Co. et al., — Mo., — 205 S. W. 615; Hutchinson v. Safety Gate Co., 247 Mo. 71, 115; Koerner v. St. Louis Car Co., 209 Mo. 141, 157; Fogarty

v. St. Louis Transfer Co., 180 Mo. 490; Miller v. Mo.
Pac. Ry. Co., 109 Mo. 350, 357; Hoke v. Railroad, 88
Mo. 360; Dowling v. Allen, 88 Mo. 295; Moore v. Rail-
road, 85 Mo. 588; White v. C. R. I. & P. Ry. Co., 156
Mo. App. 563; Hagan v. Mining Co., 131 Mo. App. 390;
Smith v. American Fdy. Co., 122 Mo. App. 610-616;
Bien v. St. Louis Transit Co., 108 Mo. App. 399; Cox
v. Granite Co., 39 Mo. App. 424, 429; Weaver v. Rail-
road, 170 Mo. App. 289. (3) The fact that the place
where plaintiff was required by Keevin's order to work
was under the control of a third person could not
relieve defendant of its duty to plaintiff to exercise
ordinary care to make and keep the place reasonably
safe for the work plaintiff was required to perform. Clark
v. Foundry Co., 234 Mo. 436; Bidwell v. Grubb, 201
S. W. 579; Greenstein v. Christopher Simpson, etc., Co.
178 S. W. 1179, 1181-2; Clark v. Goebel Const.
Co. 204 S. W. 65, Murch Bros. Const. Co. v. Johnson,
203 Fed. 1, 121 C. C. A. 353; Herdler v. Stove
& R. Co., 136 Mo. 3; Sackewitz v. Biscuit Co., 78 Mo.
App. 144; Jackson v. Butler, 249 Mo. 342; Mullery v.
Tel. Co., 180 Mo. App. 129; Id. 191 Mo. App. 124. (4)
Duty to warn is part of the duty to keep the place
reasonably safe. Koerner v. St. Louis Car Co., 209 Mo.
141, 157; Hutchinson v. Safety Gate Co., 247 Mo. 71, 115;
Johnson v. T. & T. Co., 99 N. Y. S. 375. 113 App. Div.
762; Felice v. N. Y. N. H. & H. R. Co., 43 N. Y.
S. 922, 14 App. Div. 345. (5) Keevin, by exercising
ordinary care, might have discovered that the cable
was about to be moved. He knew that the car would be
pulled up within a short time after it was let down,
and that a signal would be given before it was moved
up, but he negligently failed to look in the direction of
the car after it was let down, although he had ample
opportunity to see the signal, which was given, in time
to warn plaintiff. Weaver v. Railroad, 170 Mo. App.
284, 287; Cox v. Granite Co., 39 Mo. App. 424. Lilly
v. Menke, 143 Mo. 137, 146-7; Bushnell v. Ins. Co., 91
Mo. App. 528. (7) Defendant cannot escape liability
for Keevin's negligence in failing to discover the danger

and warn plaintiff on the theory that Keevin rightfully relied on the employees of the Sand Company to give warning to him and his crew. Giardina v. Railroad, 185 Mo. 330; Turner v. Hannibal, etc., 74 Mo. 603, 607; Paul v. Railroad, 152 Mo. App. 577, 586; Grand Trunk Ry. Co. v. Baird, 94 Fed. Rep. 946; Lenix v. Railroad, 76 Mo. 86, 91; Davies v. Railroad, 159 Mo. 1, 6-7. Lord v. Delano (Mo.), 188 S. W. 93, 95; 29 Cyc, 551; Fechley v. Traction Co., 119 Mo. App. 358, 367; Marsh v. Railroad, 104 Mo. App. 577, 587. Johnson v. Coal Co. et al., — Mo., — 205 S. W. 615; Weaver v. Railroad, 170 Mo. App. 284, 287; Clark v. Goebel Const. Co., 204 S. W. 65; Hutchinson v. Safety Gate Co., 247 Mo. 71, 115; Gray v. Coal Co., 175 Mo. App. 421; Sackewitz v. Biscuit Co., 78 Mo. App. 144; Koerner v. Car Co., 209 Mo. 141, 157; Welsh v. City, 73 Mo. 71; Russell v. City, 74 Mo. 480; Richmond Granite Co. v. Bailey, 92 Va. 554, 24 S. E. 232; Miller v. Railroad, 109 Mo. 357; (8) Keevin's opportunity to observe the signal given by Stackley was superior to plaintiff's. The duty to exercise active vigilance was upon him, for he was untrammeled by instruction or necessity, while plaintiff, by Keevin's instruction, was required to use his strength to nip the tie, keep his eye on the driving of the spikes, and concentrate his attention on the job. Jourdan v. Transit Co., 202 Mo. 418; Gessley v. Railroad, 32 Mo. App. 418; Weaver v. Railroad, 170 Mo. App. 289. (9) The testimony shows facts sufficient to induce plaintiff to rely upon the assurance flowing from defendant's instruction that the place was, and while plaintiff was engaged in nipping the tie would remain, a reasonably safe place to work; and sufficient to induce him to believe that his foreman, Keevin, in compliance with a well-established custom, would keep a lookout for, and warn him of, approaching danger while he, in compliance with the instruction, riveted his attention upon work which required it. Lancaster v. Railroad, 143 Mo. App. 164; Moore v. Railroad, 85 Mo. 588; Hough v. Power Co., 41 Oregon 531, 65 Pac. 655; Speed v. Railroad, 71 Mo. 303, 311; Richmond Granite Co. v. Bailey, 92 Va. 554, 24 S. E.

232; Coffeyville Vitrified Brick Co. v. Shanks, 76 Pac. 856; Anderson v. Mill Co., 42 Minn. 424, 44 N. W. 315; Anderson v. Railroad Co., 30 Pac. 305; Erickson v. Railroad, 41 Minn. 500, 43 N. W. 332; Fitzgerald v. International Flax Co.. 104 Minn. 138, 116 N. W. 47; Labatt, Master and Servant (2 Ed.), sec. 1112; Labatt, Id., sec. 1271; Weaver v. Railroad, 170 Mo. App. 289. (10) Bequette was not justified in refusing to obey the instruction of Keevin, for Keevin was authorized by Pittsburgh Plate Glass Company to give the instruction. Bequette did not know the cable was about to move, for his strength and attention necessarily were concentrated on the nipping of the tie. To justify an employee in refusing to obey an instruction of the master he must not only have knowledge of physical conditions but also of the danger arising therefrom. Clippard v. Transit Co., 202 Mo. 447; Hamman v. Coal & Coke Co., 156 Mo. 232; Pullman Car Co. v. Harkins, 55 Fed. 932; George Mathews Co. v. Bouchard, 8 Quebec Q. B. 550. (11) And to justify Bequette in refusing to obey Keevin's instruction and rely upon the implied assurance of safety arising therefrom, the danger would have had to be so glaring and imminent that no ordinary, careful and prudent person of his age, experience and knowledge, would have obeyed. Schroeder v. C. &. A. Railway Co., 108 Mo. 332; Stephens v. Railway 96 Mo. 212; Conroy v. Vulcan Iron Works, 62 Mo. 35; Lawrence v. Heidbretter Ice Co., 119 Mo. App. 326; Robertson v. Hammond Co., 115 Mo. App. 524; Thompson on Negligence (2 Ed.), secs. 5378-79. (12) It was not negligence on Bequette's part for him to rely upon Keevin to give him warning of the movement of the cable. When the servant is working under the direct supervision of a vice-principal, the servant and the vice-principal are not on the same plane. The servant is warranted in relying upon the exercise of diligence by master, and it is the master's duty to exercise active vigilance to observe and warn the servant of impending danger. Page v. Power Co., 139 Mo. App. 538; Bane v. Irwin, 172 Mo. 316-17; Combs v. Const. Co.,

205 Mo. 381. Keevin's negligence, in failing to warn plaintiff, was not negligence of a fellow servant. (1) Keevin was in the employ of Pittsburgh Plate Glass Company and authorized to instruct Bequette where, when and how to perform his duties to Pittsburgh Plate Glass Company, and in the habit of keeping a lookout for approaching danger while the section gang under him was repairing tracks, and in the habit of warning the crew of approching danger, and instructed and thereby caused Bequette to assume the position in which he was when injured, and he could, by exercising ordinary care to keep a lookout, have discovered that the cable was about to move and injure Bequette in time to have averted the injuries by countermanding the instruction by warning, but failed to do so, and in omitting to warn he failed to perform a non-delegable duty of Pittsburgh Plate Glass Company. Burkard v. Rope Co., 217 Mo. 467; Koerner v. Car Co., 209 Mo. 141, 157; Miller v. Mo. Pac. Ry. Co., 109 Mo. 357; Mertz v. Rope Co., 174 Mo. App. 94; Schlavick v. Shoe Co., 157 Mo. App. 83; Doss v. Railroad, 135 Mo. App. 648. (2) To determine whether or not Pittsburgh Plate Glass Company is liable for negligence of Keevin, working in the dual capacity of vice-principal and fellow servant, we look not to the rank of Keevin nor to his authority or lack of authority to "hire" or "fire," but to the nature of the duty he failed to perform in committing the negligence. Burkard v. Rope Co., 217 Mo. 467; Bane v. Irwin, 172 Mo. 306; White v. C., R. I. & P. Ry. Co., 156 Mo. App. 563; Smith v. American Car & F. Co., 122 Mo. App. 610-616; Hunt v. DesLoge Cons. Lead Co., 104 Mo. App. 377; Fox v. Dold Packing Co., 96 Mo. App. 173; Kelley v. Stewart, 93 Mo. App. 47. (3) For damages caused by negligence of Keevin in the performance of the non-delegable duty of the master, Pittsburgh Plate Glass Company, to warn Bequette, absent contributory negligence, the master is liable. Burkard v. Leschen & Sons Rope Co., 217 Mo. 466; Doss v. M., K. & T. Ry. Co.. 135 Mo. App. 643-647; Knight v. Donnelly Bros., 131 Mo. App. 152-161; Hagan v. Mining Co., 131

Mo. App. 386-390; Smith v. American Car & F. Co., 122 Mo. App. 610-619. (4) For the negligent perform-ance, by Keevin. of the non-delegable duty to warn Be-quette, Bequette's employer, Pittsburgh Plate Glass Company, is liable, even though during the performance thereof a delegable duty, also, was performed. Day-harsh v. Railroad, 103 Mo. 570; Bien v. Transit Co., 108 Mo. App. 399; Strode v. Conkey, 105 Mo. App. 12; Donnelly v. Aida Mining Co., 103 Mo. App. 349; Hutson v. Railway Co., 50 Mo. App. 300; Brennan v. Iron Bridge Co., 74 Conn. 382. (2) The court rightfully permitted John Keevin to testify that it was his custom, when he saw an engine or a car approaching, to warn the men under him to get off the track. Johnson v. Coal Co. et al., — Mo., — 205 S. W. 615, 617; Hutchinson v. Safety Gate Co., 247 Mo. 115; Hunt v. Lead Co., 104 Mo. App. 389; Omellia v. Railroad, 115 Mo. 205, 221, 222; Crawford v. Stockyards Co., 215 Mo. 415-416; Whelan v. Zinc Co., 188 Mo. App. 592. The court rightfully permitted August Beckemeyer for plaintiff to testify that when the section crew in question were working in the yards of Pittsburgh Plate Glass Company, it was the custom of the foreman, when he saw an engine or car approaching, to warn the men under him to get off the track. See authorities cited under point 2. (4) The court rightfully permitted plaintiff to testify that when the section gang were work-ing in the yards of Pittsburg Plate Glass Company it was the custom of the foreman, when he saw an engine or car approaching, to warn the men under him to get off the track. See authorities cited under point 2. (5) The court did not err in giving instruction number 1 offered by plaintiff. (6) The court did not err in re-fusing to-give instruction B. The court rightfully may refuse an instruction if the subject-matter thereof is covered by an instruction given. Rutledge v. Swinney, 261 Mo. 146. Said instruction B does not correctly state the law of the case. Hutchinson v. Safety Gate, 247 Mo. 71, 115; Johnson v. Coal Co. et al. — Mo., — 205 S. W. 615. (7) The court rightfully refused to give in-

struction D offered by Pittsburgh Plate Glass Company. See authorities cited under point 6. (8) The court did not err in refusing to give instruction E offered by Pittsburgh Plate Glass Company. See authorities cited under point 6. (9) The court rightfully refused to give instruction F offered by Pittsburgh Plate Glass Company. (10) The court rightfully refused to give instruction G offered by Pittsburgh Plate Glass Company.

ALLEN, J.—This is an action to recover for personal injuries sustained by plaintiff while in the employ of the defendant Pittsburgh Plate Glass Company, as its servant. The suit was instituted against the Pittsburgh Plate Glass Company and the Universal Sand Company, both corporations; and the trial below resulted in a verdict and judgment against both defendants, from which the Pittsburgh Plate Glass Company alone has appealed.

At the time of plaintiff's injury, to-wit, November 28, 1913, the appellant owned and operated a glass plant at Crystal City, Missouri, together with railroad tracks running therefrom for a distance of perhaps a mile or more to a point on the bank of the Mississippi River, at which place there were certain switches and side tracks. Long prior to plaintiff's injury the appellant leased the tracks and premises at and near the river bank to the Universal Sand Company. It appears that the latter company, through one Straight, was erecting a certain "plant" on the bank of the river at this point. It owned and operated a sand-pumping apparatus or station at the river bank, but, it seems, was operating it during the erection of the plant mentioned only for the purpose of pumping and delivering a few carloads of sand per week to appellant, Pittsburgh Plate Glass Company.

From a point two or three hundred yards from the river, where was located a stationary engine and a drum, a track ran down a slight incline toward the river. It appears that a short distance below this engine there were certain switches or connections, and from this

place two tracks branched off, one on either side of what is termed the main or center track. One of these side tracks, as we may term them, was used for storing empty cars while the other, referred to as the "incline track" or the "sand track," ran down to the sand pumping station at the river bank where the cars were loaded. The cars were operated on these tracks by means of a cable attached thereto and which was wound upon the drum connected with the stationary engine at the top of the incline. When it was desired to load a car with sand one of the "empties" was drawn from the side track upon which it stood, toward the engine, by means of the cable, until it passed a switch, when it was allowed to run by gravity down the other side track which extended to the pumping station at the river. And it appears that when the car was fully loaded it was drawn up by means of the cable and switched on the main or center track, where the loaded cars were stored until taken away from the premises. The evidence is that in thus loading a car with sand it was the custom to first load the upper or forward end of the car, which operation took a few minutes only, and then the car was pulled forward, by means of the cable, about a half a car length in order that sand might be pumped into the lower end of the car; and that when entirely filled the car was drawn up the track and switched onto the center or main track as stated above.

It appears that prior to plaintiff's injury there had been some dispute or contention between these two companies as to whose duty it was to repair the tracks upon these premises leased and occupied by the Universal Sand Company; but that it was ultimately agreed that the appellant would make such repairs. On the day of plaintiff's injury plaintiff and three fellow-laborers in appellant's employ, under the immediate supervision of one John Keevin, appellant's foreman, were engaged in repairing the main or center track between the stationary engine mentioned and the pumping station at the river bank. As stated the engine and drum were two or three hundred yards from the pump-

ing station; and between these two points the "sand track," or the side track extending to the pumping station, curved somewhat. Keevin and this crew of men were repairing the center track at a point, it is said, about one hundred yards from the stationary engine, and at this or a somewhat greater distance from the pumping station. Plaintiff, at the express direction of Keevin, who was standing four or five feet from him, was engaged in "nipping a tie," i. e., was raising one end of a tie with a crowbar, using a block or other support as a fulcrum, while a spike was being driven into the tie by another member of the crew. In doing this work, in obedience to the direction of the foreman, plaintiff stood, it is said, at the side of this main track near the end of the tie with his left foot to the rear and placed beyond the nearer rail of the side track which ran to the pumping station and which joined the main track a short distance above this point. A few minutes before plaintiff was assigned to this specific work a car had been sent down to the pumping station over this side track to be filled with sand; and the cable lay loose upon the ground a short distance, perhaps four or five feet, behind plaintiff. While plaintiff was thus engaged, intent upon his work, and watching the driving of the spike mentioned, the stationary engine was suddenly started in motion by the engineer, one Myers, an employee of the Universal Sand Company, causing the cable, as it was drawn taut, to swing over toward plaintiff and strike his leg, crushing it against the rail of the side track, causing a serious injury.

Keevin, who had been in appellant's employ for a long time, and whose duty it was to supervise the making of repairs of these tracks, was entirely familiar with the method of handling and loading these sand cars upon the premises mentioned. He knew that when a car was sent down to the pumping station it required but a short time to fill the lower end of it, and that in the ordinary course of events the car would then be moved forward a short distance in order to fill the other end thereof; and he knew that when the stationary en-

gine was started for this purpose the cable would swing violently to one side. Plaintiff, who had worked for appellant many years in one capacity or another, had worked for several months as a member of a crew repairing tracks, during about half of which time he was under Keevin. He had also worked at making repairs on the tracks on these premises and was familiar with the operation of the cars and the swinging of the cable.

It appears that when a car had been loaded or partly loaded with sand at the pumping station, and was ready to be moved, it was customary for the employee of the Universal Sand Company in charge of the loading operation to stand upon the car, or upon "a flat car ahead of the sand car," and signal to the engineer in charge of the stationary engine by waiving his hands over his head, giving what is termed a "high ball;" and that it was the custom of the engineer, before starting the engine, to call out a warning to anyone upon or about the tracks who might be endangered by the swinging of the cable. On the day of plaintiff's injury one Stackley, an employee of the Universal Sand Company, was in charge of the sand pumping apparatus at the river bank; and it was his duty to give the signal mentioned when the car had been partly filled and was ready to be drawn forward a short distance in order to fill the other end thereof.

It appears that this was the first car that had been filled on the day of plaintiff's injury. Keevin, and all the members of the crew, including plaintiff, testified that they heard no warning shouted by the engineer, or anyone else, before the engine was put in operation causing the cable to swing and strike plaintiff; and there is other testimony of like tenor. Myers, the engineer, testified, however, that a few minutes after the car had been sent down to the sand pumping apparatus he observed Stackley standing upon the car waiving his hands, i. e., giving a "highball;" that he thereupon shouted a warning to the members of the crew who were upon or about this main track, and that all of them

seemed to move out of danger except plaintiff; that he waited some considerable time, about four or five minutes, before starting the engine, during all of which time Stackley continued to signal to him in the manner stated above; and that Stackley yelled to him twice before he started the engine.

Stackley, on the other hand, testified that he gave no such signal for the car to be moved forward; though he says that he was in fact standing on the sand car, and that he saw Keevin and the crew about the tracks, one man being on the main track, and that he yelled three times to them to warn them. On direct examination he was asked what he did when "the car got full of sand," and he said: "I didn't do nothing; I yelled three times; nobody looked up and the engine started." He said that no one seemed to be paying any attention to his yelling; that he made no gestures whatsoever. On cross-examination he was asked how the engineer received the signal to start, and he said that he did not know; that he did not want the car to start at that time, and that the starting thereof was unexpected to him. When asked why he yelled three times to warn people to get off the track if he did not intend that the car move forward, or did not want it to move at that time, he said: "It was this way, I saw the man on the track on the main line and I yelled to him three times and at that time the engine started up."

Just what time elapsed after the car had been placed at the sand pumping station and before the engine was started is not made entirely clear by the evidence. Keevin, in testifying as to this, said: "It didn't seem to me like it was more than three or four minutes." As said above, it required but a few minutes to load one end of the car. And it may be inferred from the evidence as a whole touching the matter that the car had been placed at the pumping station longer than three or four minutes, and that Keevin did not realize this. As stated, supra, the testimony of the engineer is that four or five minutes elapsed while Stackley was waiving his hands; and the car had evidently been at the pumping

station a few minutes before this signal was given, assuming that it was so given. And the testimony is that the car had been sent down to the pumping station a few minutes before plaintiff began "nipping" the tie, and he says that he had been engaged in this work for perhaps two or three minutes when injured.

Keevin testified that he was not looking toward the pumping station to see if Stackley was giving a signal; and that he could not say that he "was listening particularly" for a warning to be shouted, though, he says, he would have heard a warning had one been shouted.

Over defendant's objections plaintiff introduced evidence regarding Keevin's custom, in repairing tracks of the appellant with this crew, in respect to keeping a lookout for approaching danger, and giving the men under him a warning thereof. Keevin testified that it was his duty to look out for any danger that he "saw approaching;" and to warn the men to get out of the way when he "saw some danger to apprehend." Plaintiff testified: "He (Keevin) watched his men at work, he kept a lookout for his men from danger. . . . If there was anything to interrupt us when working, he gave us warning, told us to get off the track where we were working." Another witness for plaintiff, a member of this crew, said: "Mr. Keevin always told us to get out of danger when there was any."

It is earnestly contended by appellant's learned counsel that the trial court erred in refusing to peremptorily direct a verdict for appellant; but we are not persuaded that this argument is sound. The fact that the work of repairing these tracks was being done by appellant, with this foreman and crew of men, upon premises leased to appellant's codefendant, the Universal Sand Company, did not relieve appellant from whatever measure of duty it lawfully owed to plaintiff in respect to keeping safe the place where plaintiff was required to work at the time of his injury. [See Clark v. Foundry Co., 234 Mo. 436, 137 S. W. 577; Bidwell v. Grubb, —— Mo. App. ——, 201 S. W. 579; Greenstein v.

Christopher-Simpson A. I. & F. Co., 178 S. W. 1179.]
And we are of the opinion that liability may be cast
upon appellant as for failure of its foreman to exercise
ordinary care to keep this place reasonably safe or to
warn plaintiff of impending danger.

When injured plaintiff was obeying the command of
appellant, through its foreman, which required him to
place himself in a position between the track upon which
he was working and the cable which lay a short dis-
tance behind him. While plaintiff was in this position,
and held there, as it were, by the force of this order, it
was the duty of the foreman, we think, as the *alter
ego* of appellant, to exercise ordinary care to keep this
place reasonably safe while plaintiff was thus required
to occupy it. [See Koerner v. St. Louis Car Co., 209
Mo. 144, 107 S. W. 481; White v. Montgomery Ward &
Co., 191 Mo. App. 268, 176 S. W. 1089; Chulick v.
American Car & Foundry Co., — Mo. App. —, 199 S. W.
437.] And, under the circumstances, the performance
of this personal continuing duty of the master would
require that the foreman exercise some care to ascertain
when the car at the pumping station was about to be
moved. It is true that the record discloses negligence
on the part of the engineer of the sand company in
starting the engine without ascertaining that plaintiff
had received a warning. But it does not follow that
there was no negligence on the part of appellant's fore-
man in the premises. And when the evidence is viewed
in the light most favorable to plaintiff, as it must be
viewed for the purposes of the demurrer, we think that
negligence on the part of the foreman appears, such as
to make the case one for the jury. From the evidence
disclosed by the record, it does not appear that we can
say, as a matter of law, that Keevin performed the
whole duty which appellant owed plaintiff as its servant.

Appellant argues that since neither Keevin nor any
members of the crew, according to their testimony, heard
any warning, Keevin was not negligent in failing to
transmit a warning to plaintiff; that Keevin was not
required to keep his eyes continually fixed upon the

pumping station, or the car thereat, in order to watch for a signal from Stackley, which in fact was intended as a signal to the engineer and not to Keevin or his crew. We do not say that Keevin was required to keep his eyes constantly fixed upon the pumping station, or the car at that place, to watch for a signal from Stackley to the engineer. But this does not mean that there was no duty on Keevin's part to keep any lookout to ascertain when the car was about to be moved. He knew that the car had been sent down this side track to the pumping station a few minutes before, and that in the ordinary course of events it would be moved a few minutes later, causing the cable to be swung about. Of this he was fully aware, according to his own testimony. But he took no precautions whatsoever to guard against injury to plaintiff who, by his express command, had been placed in a position likely to be rendered unsafe in a very few minutes. He testified that he did not look toward the pumping station, and did not "listen particularly;" though, according to the testimony of the engineer, Stackley signalled for four or five minutes, and both he and the engineer shouted warnings. Appellant, through its foreman, was not entitled to wholly rely upon the employees of the sand company to see that plaintiff received a warning, and thus shift to others the non-delegable duty which it owed plaintiff in respect to providing a safe place to work and keeping that place safe. And whether Keevin exercised ordinary care in this respect, under the circumstances, was, in our judgment, a question for the jury.

It is true, as appellant asserts, that Stackley testified that he gave no signal, or highball, by waiving his hands; but plaintiff is not concluded by this testimony. The evidence, regarded in the light most favorable to plaintiff, makes it appear that this signal was continuously given for four or five minutes, as the engineer testified. In this connection much stress is laid upon the fact that plaintiff, in his petition, alleges that the "defendants . . . negligently failed to warn John Keevin, the servant of defendant Pittsburgh Plate Glass

Company, authorized and required by said defendant to instruct and control plaintiff and warn him of approaching danger and provide him a safe place to work, that said cable was about to move." This, it is said, constitutes an admission that no warning was given Keevin by the employees of the sand company. But, indeed, it constitutes no more than an admission that Keevin received or heard no warning.

Nor do we think that it can be said that plaintiff was guilty of contributory negligence as a matter of law. He was obeying an express command of the master, through its foreman, and was engaged intently upon the work in hand. And he says his duties required that he watch the driving of this spike by his fellow laborer. He could not well perform this task and at the same time watch the movements of the employees of the sand company; and he cannot be convicted of contributory negligence, as a matter of law, in failing to hear a warning, if one was shouted. His opportunity for discovering that the danger was imminent was not equal with that of the foreman who was performing manual labor but was standing a few feet from plaintiff directing the work.

The doctrine of Degonia v. St. Louis, etc., R. R. Co., 224 Mo. 564, 123 S. W. 807, and cases of that character, to the effect that it is ordinarily the duty of track laborers or section hands working upon the tracks of railroad companies to keep a lookout for passing trains, has, we think, here no application.

The action of the court in admitting the testimony adduced by plaintiff regarding Keevin's custom to warn his men of danger, is assigned as error. We are of the opinion, however, that no prejudicial error was committed in admitting this testimony in evidence. So far as it went it tended to show an established custom in conducting this branch of defendant's business, known to the members of this crew, and upon which they were accustomed, in some measure at least, to rely. And it appears that in pursuing this custom to warn the men of danger which he knew was approaching or which he had reason to apprehend, Keevin was merely to that ex-

tent performing the duty which appellant owed to plaintiff and other members of this crew.

The questions raised regarding the giving and refusal of instructions are sufficiently disposed of by what we have said above. We perceive no reversible error in the record and the judgment is accordingly affirmed.

.    *Reynolds, P. J.*, and *Becker, J.* concur.