JOSEPH J. COOK, Respondent, v. ATLAS PORTLAND CEMENT COMPANY and WILLIAM J. MITCH-ELL, Appellants.*

St. Louis Court of Appeals. Opinion Filed February 5, 1924.

1. **MASTER AND SERVANT:** Negligence: Servant Injured: Safe Place to Work: Duty of Master Stated. It is the duty of the master to use reasonable care to furnish to his servant a reasonably safe place in which to do his work and to use reasonable care to see to it that the place is kept reasonably safe while the work is being done; and to this end, if the master knows, or by the exercise of ordinary care ought to have known, that the servant is about to be exposed to perils arising from the fact that a safe place will become dangerous, by reason of an independent act about to be performed for the master's business, it becomes the master's duty to give the servant such warning of the impending danger as will enable him, in the exercise of ordinary care, to avoid it.

(596)

2. ———: ———: ———: Foreman Alter Ego of Master: Failure to Furnish Safe Place to Work and Keep it Safe: Liability of Master. It was the duty of a foreman superintending work, as the *alter ego* of the master, to use reasonable care that the place where a servant was at work was reasonably safe, and that the same was kept so while said work was being done, and a failure to perform this duty was negligence for which the master is liable.

3. ———: ———: ———: ———: ———: Knowledge of Foreman of Danger: Duty to Warn. Where a foreman knew that a servant doing the work of changing screens of a mill might have occasion to get inside the mill, and that starting the mill·while the servant was inside would injure him, and knew that it was to be started, and knew, or in the exercise of ordinary care on his part, ought to have known that the servant was inside the mill, there was a legal duty upon him to warn the servant that the mill was about to be started.

4. ———: ———: ———: ———: ———: Contributory Negligence. Where a servant entered a cement mill to do work he was told to do, and at the time the power was off and the mill and rollers were at rest, and the place where he was engaged was at that time entirely safe, but it was afterwards rendered unsafe by the negligent act of defendants, in turning on the power and moving the rollers in the mill, without giving plaintiff any warning of their intention to move the mill and without his knowledge, thereby injuring him, he was not guilty of contributory negligence as a matter of law, the danger to which he was exposed not being attributable to him or incident to the mode of doing the work.

5. ———: ———: ———: Assumption of Risk: Risk Not Incident to Work: Not Assumed. Where a servant was injured by the sudden starting of a mill without warning to him, while he was inside of the mill at work, the danger from the sudden starting of the mill was not a risk ordinarily incident to the work, but was a danger that arose because of defendants failure to use care to provide plaintiff with a place of reasonable safety, and the plaintiff did not assume the risk arising from such negligence.

6. ———: ———: ———: Fellow Servants: Negligence of Master Combined With Fellow Servant: Liability. Where a servant engaged in removing screens from a mill was injured through the negligence of a fellow servant in starting the mill, and through the negligence of a foreman in not warning him of the impending danger, both the master and the foreman were liable for the injury thus sustained.

7. ———: ———: ———: Failure of Foreman to Warn of Danger: Liability: Question for the Jury. In an action by a servant to re-

cover damages for injuries sustained by him caused by the sudden starting of a mill by a fellow-employee, and the failure of a foreman who was present directing the work, to warn him of the impending danger, a refusal by the trial court to direct a verdict for defendants at the close of the whole case, *held* proper.

8. **INSTRUCTIONS: Master and Servant: Instruction Not Erroneous as Excluding Question Whether Foreman Knew of Danger to Servant.** In an action by a servant for injuries sustained, caused by the sudden starting of a mill, an instruction, which tells the jury that if they find the facts as stated in the instruction, and if the foreman knew, or in the exercise of ordinary care on his part could have known of the danger to which plaintiff was exposed when the mill was started, to return a verdict for plaintiff, was not erroneous as excluding from the consideration of the jury the controverted issue of such knowledge on the part of the foreman.

9. **DAMAGES: Excessive Damages: Broken Rib and Permanent Injuries: $5000 Not Excessive.** In an action for damages for personal injuries, where the evidence discloses that plaintiff was unable to perform any labor for a period of over four months; that he was confined in the hospital for ten days and was under medical care for two months; that his back and arms were severely burnt and injured; that he suffered a broken rib and received an injury to his chest, heart, and nervous system; that because of his injuries he was unable to stand erect without having pain; that his physical strength was impaired and his weight reduced; and that plaintiff's condition was permanent, *held*, under the evidence, a verdict of $5000 was not excessive.

*Headnote 1. Master and Servant, 26 Cyc, pp. 1098, 1166;   2. Master and Servant, 26 Cyc, p. 1309;   3. Master and Servant, 26 Cyc, pp. 1338, 1340;   4. Master and Servant, 26 Cyc, p. 1482;   5. Master and Servant, 26 Cyc, pp. 1182, 1225;   6. Master and Servant, 26 Cyc, p. 1302;   7. Master and Servant, 26 Cyc, pp. 1460, 1473;   8. Master and Servant, 26 Cyc, p. 1499;   9. Damages, 17 C. J., section 408.

Appeal from the Hannibal Court of Common Pleas of Marion County.—*Hon. Charles T. Hays*, Judge.

AFFIRMED.

*George A. Mahan, Dulany Mahan* and *Ezra T. Fuller* for appellants.

*Eby & Hulse* and *Berryman Henwood* for respondent.

(1) It was the duty of defendants to exercise ordinary care to see that plaintiff's place of work was safe and kept safe, and such duty was a continuing non-delegable one. The record clearly shows that the plaintiff's place of work was rendered unsafe by the sudden starting of the mill. Plaintiff had no control over the conditions that caused his injury. A *prima-facie* case was clearly made by the evidence under the pleadings, and the trial court properly overruled both of defendants' demurrers. Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481; Corby v. Tel. Co., 231 Mo. 417, 132 S. W. 712; Propuolenis v. Goebel Construction Co., 279 Mo. 358, 213 S. W. 792; Adair v. K. C. Terminal Ry. Co., 282 Mo. 133, 220 S. W. 920; English v. Roberts, Johnson & Rand Shoe Co., 145 Mo. App. 450; Schneidler v. Iron Works, 172 Mo. App. 688, 155 S. W. 897; Kettlehake v. Car and Foundry Co., 171 Mo. App. 528. (2) Even if it be conceded that the fellow servant Brown was guilty of negligence and that plaintiff's injuries were caused by the combined negligence of such fellow servant and the negligence of foreman Mitchell in failing to duly warn plaintiff of the impending danger, the plaintiff is still entitled to recover; as the law is well settled in this State that one servant may recover for an injury caused by the combined negligence of the master and a fellow servant. Mertz v. Rope Company, 174 Mo. App. 94, 156 S. W. 807; Johnson v. Kansas City Bolt and Nut Co., 172 Mo. App. 214, 157 S. W. 665; Small v. Polar Wave Ice and Fuel Co., 179 Mo. App., 456, 162 S. W. 709; Budde v. Incandescent Lamp Co., 193 Mo. App. 151, 181 S. W. 1034; Amick v. Kansas City, 187 S. W. 582; Morin v. Rainey, 207 S. W. 859, 72 S. W. 522; English v. Rand Shoe Co., 145 Mo. App. 451, 122 S. W. 747; Burkard v. Rope Co., 217 Mo. 466, 482, 117 S. W. 35; Bane v. Irwin, 172 Mo. 306, 72 S. W. 522; Jorkiewicz v. Brake Co., 186 Mo. App. 534, 172 S. W. 441. (3) The defendant Cement Company is liable for the negligent act, or failure to act, of Mitchell in his capacity as vice-principal and foreman of said Cement Company, even though Mitchell may have been a fellow servant of plaintiff while engaged in assisting in

putting in the screens. The doctrine of the dual capacity of an employee, being both a vice-principal and fellow servant, is firmly established in the law of this State. Fogarty v. Transfer Company, 180 Mo. 490; Burkard v. Rope Company, 217 Mo. 482, 117 S. W. 35; Radtke v. Basket and Box Co., 229 Mo. 1, 129 S. W. 508; McIntyre v. Tebbets, 257 Mo. 117; Strother v. Milling Co., 261 Mo. 1; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460; English v. Rand Shoe Co., 145 Mo. App. 450; Mertz v. Rope Company, 174 Mo. App. 94, 156 S. W. 807; Small v. Fuel Company, 179 Mo. App. 456, 162 S. W. 709; Bradshaw v. Standard Oil Co., 199 Mo. App. 688, 204 S. W. 831; Montgomery v. Payne, Director General, 228 S. W. 842. (4) Under no view of the evidence can this court hold that the plaintiff was guilty of contributory negligence as a matter of law. Under all the facts and circumstances in evidence, the question of plaintiff's contributory negligence was clearly a jury question. Mertz v. Rope Company, 174 Mo. App. 94; Koerner v. St. Louis Car Co., 209 Mo. 141; Hutchinson v. Safety Gate Co., 247 Mo. 71; Linn v. Massallon Bridge Co., 78 Mo. App. 111; Kettlehake v. Car and Foundry Company, 171 Mo. App. 528; Stockton v. Street Railway, 177 Mo. App. 286; Jorkiewicz v. Brake Company, 186 Mo. App. 534. (5) Assumption of the risk constitutes no defense in this case. The danger from the sudden starting of the mill while the plaintiff was inside of the same, and without warning to plaintiff, was not a risk ordinarily incident to the work. The mill was always stationary while the workmen were changing the screens. The starting of the mill without warning was gross negligence on the part of the master under the facts in this case. The servant, by his contract of employment, never assumes any risk that arises out of the negligence of the master. Williamson v. Light and Power Co., 281 Mo. 544, 219 S. W. 902; Hutchinson v. Safety Gate Co., 247 Mo. 71; George v. Railroad, 225 Mo. 364; Williams v. Pryor, 272 Mo. 613; Fish v. Railroad, 263 Mo. 106; Charlton v. Railroad, 200 Mo. 413 (and cases cited); Koerner

v. St. Louis Car Co., 209 Mo. 141; Curtis v. McNair, 173 Mo. 270; Mertz v. Rope Company, 174 Mo. App. 94 (and cases cited); Kettlehake v. Car and Foundry Company, 171 Mo. App. 528. (6) Plaintiff's instruction No. 1, fully and fairly covered the case, requiring the jury to find every fact necessary to plaintiff's right of recovery. Said instruction neither narrowed nor broadened the issues made by the pleadings and the evidence.

BRUERE, C.—This is an action to recover damages for injuries received by plaintiff, while engaged in the service of the defendant, the Atlas Portland Cement Company, by the alleged negligence of the company and its employee William J. Mitchell. Plaintiff obtained a verdict and judgment below for five thousand dollars, and defendants appeal.

The petition, *inter alia,* averred that on the 24th day of August, 1919, plaintiff was in the employ of defendant Cement Company and that defendant Mitchell was an assistant foreman under defendant's superintendent, Frank Smith, in charge of defendant's mills in Clinker Mill building No. 2; that on said day plaintiff was ordered and directed by said Frank Smith to assist in changing the screens in Mill No. 18, in Clinker Mill building No. 2; that in obedience to said order, with the assistance of other employees of said Cement Company, plaintiff proceeded to the performance of such work under the orders and directions of said William J. Mitchell, assistant foreman in charge of the work of changing said screens; that in preparation for the doing of said work the clutch attached to the line shaft, which propelled said mill, was, under the directions and orders of said William J. Mitchell, thrown off thereby causing said mill to cease revolving and the machinery thereof to stop running; that in making the change of such screens as aforesaid, it became necessary for plaintiff to get inside of said mill; that after said clutch was thrown off and while said mill was not revolving and the machinery thereof was not in motion the plaintiff started to get inside of said mill for the purpose aforesaid; that

just after a portion of plaintiff's body had passed through the door, of the mill, and without warning to plaintiff, the said William J. Mitchell carelessly and negligently directed, and, with knowledge of the danger to which plaintiff was then and thereby exposed, knowingly permitted one C. E. Brown, the servant and employee of said Cement Company, then and there under the control and command of said William J. Mitchell, to throw on said clutch thereby causing said mill and the steel rollers therein to revolve, whereby and by reason whereof the body and arms of the plaintiff were caught between said steel rollers and the jam of said door in said mill and were bruised, crushed and otherwise injured. It is further alleged that at the time said clutch was thrown on and said mill was started and put in motion, the defendant Cement Company and said vice-principal and assistant foreman, the said William J. Mitchell, knew, or in the exercise of ordinary care on their part could have known, of the dangerous situation in which the plaintiff was placed as aforesaid in time to have prevented the throwing on of said clutch and putting said mill in motion and in time to have given the plaintiff due and timely warning of the danger to which he was exposed as aforesaid, and could have thereby avoided injuring the plaintiff; that by reason of the premises defendant Cement Company and defendant William J. Mitchell failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and negligently and carelessly permitted C. E. Brown to throw on said clutch while plaintiff was passing his body through said door in said mill and negligently failed to give the plaintiff any warning that such clutch was going to be thrown on and said mill started and put in motion; and thereby negligently created risks not ordinarily incident to plaintiff's said employment and that rendered plaintiff's work dangerous and unsafe; and that said injuries to plaintiff were the direct and proximate result of said negligence on the part of said Cement Company and its said vice-principal, defendant William J. Mitchell.

The answer is a general denial coupled with a plea of contributory negligence and assumption of the risk and a further plea that plaintiff was injured by the act of his fellow servant or fellow servants and employees, on which issue was joined by reply.

Defendant's assignment of errors are; first, that the trial court erred in refusing to direct a verdict for the defendant at the close of the whole case; second, that the trial court erred in giving to the jury instruction No. 1, requested by plaintiff, and third, that the verdict is excessive.

The facts in the case, as to how the accident occurred, are not in dispute. Briefly summarized they are as follows: The plaintiff, at the time of the accident, was in the employ of the defendant, Atlas Portland Cement Company, at its manufacturing plant as a common laborer. William J. Mitchell was the assistant foreman under defendant's superintendent, Frank Smith, and as such had charge of defendant's Mill No. 18, in Clinker Mill building No. 2, with authority to give orders and direct the men under him in their work. It was Mitchell's duty to inspect from time to time the pulverized product as it come through the screens in the mills, and if he found coarse particles in such product he would know that the screens had holes in them and it thereupon became his duty to see that such screens were changed.

Mill No. 18, was used to grind up clinkers into pulverized form. The grinding was done by means of three large steel rollers, weighing about four or five hundred pounds each, which revolved in a circle inside of the mill and rolled against a concrete ring. The friction of the rollers on the ring would cause them to become red hot. The mill was operated by electric power, which was imparted from a line shaft to the mill. There was a clutch near the line shaft which controlled the power from the shaft to the mill. By means of a block or wedge, placed over the top of the mill and between a spoke of a wheel, the rollers in the mill could be kept from revolving more than eighteen inches when the power was thrown on. The mill was octagon in shape and

about seven feet high. On each side or panel, inside the mill, was a screen. These screens were fastened to the panels by bolts, which were put through the screens and panels from the inside of the mill and extended to the outside where nuts or taps were screwed on them and securely fastened with wrenches.

Shortly prior to the accident Mitchell informed Frank Smith, defendant's superintendent, that Mill No. 18 was graveling and the screens needed changing; whereupon Smith told Mitchell to "take Cook over there to help and fix up the mill." In obedience to this order Mitchell took the plaintiff to said mill and ordered Brown, the miller there employed, to shut down the mill. After the mill was shut down the plaintiff and C. E. Brown under and in response to the orders of Mitchell, and under his supervision, began the work of changing the screens in the mill. They first removed one of the panels which formed the door and swung it back by means of a block and tackle. This door was on the north side of the mill, directly opposite and about twenty feet from the line shaft. After that the plaintiff went to work to change the screen on the door panel. Brown went inside the mill and first changed the screen to the right of the opening, where Mitchell was assisting him in screwing on the taps on the outside, then he changed the second screen to the left of the opening and put the bolts through from the inside. He then attempted to change another screen and found one of the rollers in the way and that it was necessary to move the mill in order to change this screen. Brown then came out of the door and hollered to Mitchell "Look out Bill I am going to move the mill." It appears that the running of the machinery and the operation of the other mills in the building made a great deal of noise, so that it became necessary to shout in a loud tone of voice in order to be heard. When Brown hollered to Mitchell "look out I am going to move the mill" his head was about fifteen or eighteen inches from Mitchell's ear. Mitchell at this time was standing on the outside of the mill working at the first panel to the right of the door and about a foot from the opening.

When Brown left the mill through the opening he climbed up on the mill and changed the block or wedge so that he could turn on the clutch and move the rollers. He then got down off the mill and proceeded around the mill to the power shaft, and after throwing some water on the clutch threw the clutch on and moved the mill about eighteen inches. After Brown started the mill he went in front of the mill and found the plaintiff with his shoulders and back inside the mill and caught between a roller and the jam of the door. Brown then ran back to the clutch, turned off the power and with the help of Mitchell pried the roller from the plaintiff and got him out of the mill.

The plaintiff in his testimony states that, having finished putting the screen on the door, he walked to the second panel to the left of the opening and started to screw the tap or bolt which Mr. Brown had pushed through the panel from the inside of the mill; that in doing so he shoved the bolt back into the mill and then waited a few minutes for Brown to shove the bolt back through to him; that when the bolt did not appear he went around to the opening and saw the bolt lying on the bottom of the mill, that, seeing that Brown was not in the mill, he reached through the opening, placed the upper part of his body in the mill, picked up the bolt and started to shove it back through the panel when Brown threw on the clutch and moved the mill, thereby catching plaintiff between the jam of the door and one of the rollers as it came around and injuring him. Plaintiff further testified that when he got in the mill to pick up the bolt Mitchell was standing within a foot of the opening and facing it; that he did not see Brown when he went to turn on the clutch; that no one, at any time, gave him any warning or notice that the mill was to be started up, and that he had no knowledge or intimation that it was going to be moved. Plaintiff's said testimony was uncontradicted.

Mr. Brown testified that after he came out of the door to move the mill he did not see the plaintiff until he

found him fastened in the mill. He also testified that Mitchell knew he was going to change the mill.

Mr. Mitchell, on behalf of the defendant, testified that he, with the assistance of Brown and the plaintiff, opened the mill in order to change the screens; that he took the taps off the bolts on the first panel to the right of the opening and that plaintiff took the taps off the bolts on the first panel to the left of the opening; that Brown went inside the mill and assisted in getting said screens off and then proceeded to remove another screen when he heard Brown say *"Have to move the roll;"* that Brown and the plaintiff were both experienced men and that he did not pay any attention to what they were doing; that when a man was inside the mill changing screens, and found a roll in a position to interfere with the removal of a screen, that it was usual and customary to turn on the power and move the roll around and out of the way; that at such times the miller would move the mill, in this case Mr. Brown; that he had nothing to say with reference to giving an order as to just when and how the mill should be moved on said occasion; that if the miller or the man working inside the mill found it necessary to move the mill, he would do it himself without orders. He further testified that he did not know that Brown intended to start the mill, or that plaintiff was in the mill until after the accident; that he was standing near the opening when Brown started the mill and so close thereto that plaintiff's legs swung against his legs when plaintiff was caught in the mill; that when he realized what had happened he hollered to Brown "Come help take the mill off the man" and that Brown came, and, with the aid of a crow-bar, assisted him in prying the roll back and releasing the plaintiff.

The cause went to the jury on Mitchell's failure to warn plaintiff of the starting of the mill. This theory was submitted to the jury by plaintiff's instruction No. 1.

In support of defendant's assignment of error that the trial court erred in refusing to direct a verdict for the defendant at the close of the whole case, it is contended; first, that under the evidence adduced there was

no legal duty upon the defendants to warn plaintiff that the mill was to be started; second, that plaintiff was guilty of contributory negligence, as a matter of law, in voluntarily placing himself in a position of danger without warning the other workmen that he was about to enter the mill or without ascertaining for his own safety whether or not the mill was about to be started; third, that plaintiff assumed the risk; and, fourth, that plaintiff was injured by the act of his fellow servant Brown, for which he cannot recover.

Touching the first contention, it is the duty of the master to use reasonable care to furnish to his servant a reasonably safe place in which to do his work and to use reasonable care to see to it that the place is kept reasonably safe while the work is being done; and to this end, if the master knows, or by the exercise of ordinary care ought to have known, that the servant is about to be exposed to perils arising from the fact that a safe place will become dangerous; by reason of an independent act about to be performed for the master's business, it becomes the master's duty to give the servant such warning of the impending danger as will enable him, in the exercise of ordinary care, to avoid it.

There is no dispute in this record but that Mitchell was intrusted by the defendant, Cement Company, with the authority to superintend, direct and control the plaintiff and Brown in the performance of the work in which they were engaged, and that he was present exercising this authority at the time of the accident. It was, therefore, Mitchell's duty, as the *alter ego* of the defendant, to use reasonable care that the place where plaintiff was at work was reasonably safe, and that the same was kept so while said work was being done, and a failure to perform this duty was negligence for which the defendant Cement Company is liable.

In the instant case it is apparent, from the evidence adduced, that the starting of the mill while a workman was on the inside thereof, would necessarily result in injury to such workman, and that this fact was known to Mitchell. It is further in evidence that it was necessary

to work both inside and outside of the mill in doing the work of changing the screens. Mitchell, therefore, knew that plaintiff, in doing the work he was directed to do, might have occasion to get inside the mill. The evidence further tends to show that Mitchell knew that the mill was to be started, and that, when the mill was moved and plaintiff was engaged inside the mill, he was so close to plaintiff that he was struck by plaintiff's legs when plaintiff tried to extricate himself. The evidence shows, therefore, that Mitchell could readily have seen the plaintiff by looking, and that he knew or, in the exercise of ordinary care on his part, ought to have known the situation of the plaintiff at the time the mill was started.

Viewing the evidence in the light most favorable to the plaintiff, as we must do in passing on the demurrer to the evidence, the evidence tends to show that Mitchell knew, or, in the exercise of ordinary care on his part, ought to have known the facts which made the starting of the mill negligence, and that there was a legal duty upon him to warn plaintiff that the mill was about to be started.

As to defendants contention that plaintiff was guilty of contributory negligence, as a matter of law, we do not think that this contention is sound. It cannot be said, as a matter of law, that the danger to which plaintiff was exposed was attributed to him or incident to the mode of doing the work. When plaintiff entered the mill, to do the work he was told to do, the power was off and the mill and rollers consequently were at rest. The place where he was engaged was at that time entirely safe, but it was afterwards rendered unsafe by the negligent act of the defendants in turning on the power and moving the rollers in the mill, without giving plaintiff any warning of their intention to move the mill and without his knowledge. Mitchell was present and in general charge of the work which was being done. He was there undertaking to perform duties which it was the business of the defendant Cement Company to perform. The plaintiff, therefore, had the right to assume that Mitchell would, in the performance of said duties, see to it that

the place in which plaintiff worked was kept reasonably safe while the work was being done, and that the mill would not be started without giving plaintiff such warning as would enable him to avoid being caught in the mill and injured.

Nor can defendants' contention that the plaintiff assumed the risk be maintained. "An employee only assumes such risks, in respect of the place where he is put to work, as are incident to the service after the employer has performed his duty by using care to provide a place of reasonable safety." [Williamson v. Union Electric Light & Power Co., 281 Mo. 1. c. 549, 550, 219 S. W. 902.] The danger from the sudden starting of the mill while the plaintiff was inside of the same, and without warning to him, was not a risk ordinarily incident to the work but was a danger that arose because of defendants' failure to use care to provide plaintiff with a place of reasonable safety, and the plaintiff did not assume the risk arising from such negligence.

Coming to defendant's last contention that the evidence shows conclusively that plaintiff was injured by the act of his fellow servant Brown, and that, therefore, the trial court erred in overruling the demurrer to the evidence, we do not think that the instant case is within the general rule regarding liability of the master for injuries caused by the negligence of a fellow servant.

This action is bottomed on defendants failure to warn plaintiff of the starting of the mill. While the evidence adduced discloses negligence on the part of Brown in starting the mill, the evidence tends to show that the defendant was also negligent in not warning the plaintiff of the impending danger. The case, therefore, is one where the injury complained of occurred through the negligence of the master combined with that of the fellow servant, hence the defendants are liable for the injury thus sustained.

We hold that the action of the trial court in refusing to direct a verdict for the defendant at the close of the whole case was proper. [Koerner v. St. Louis Car Co., 209 Mo. 160, 107 S. W. 481; Young v. Lusk, 268 Mo.

639, 187 S. W. 849; Kettlehake v. Car & Foundry Co., 171 Mo. App. 541, 153 S. W. 552; Johnson v. Brick & Coal Co., 276 Mo. 53, 205 S. W. 615; Bequette v. Plate Glass Co., 200 Mo. App. 522, 207 S. W. 852; Hutchinson v. Safety Gate Co., 247 Mo. 94, 152 S. W. 52; Mertz v. Rope Co., 174 Mo. App. 94, 156 S. W. 807; McCall v. B. Nugent Bros. Dry Goods Co., 236 S. W. 324; H. & St. J. R. R. Co. v. Fox, 31 Kan. 597; Railway Co. v. Triplett, 54 Ark. 299, 15 S. W. 831, 16 S. W. 266; Haynie v. Tennessee Coal, Iron & R. Co., 175 Fed. 56.]

Regarding the error assigned that the trial court committed error in giving plaintiff's instruction No. 1, it is insisted that said instruction, which tells the jury if they find the facts as stated in the instruction they should return a verdict for the plaintiff, ignores and excludes from the consideration of the jury the controverted issue whether defendant Mitchell knew or, in the exercise of ordinary care on his part could have known of the danger to which plaintiff was exposed when the mill was started.

This insistence is without merit. The instruction submits said issue to the jury in the following words: "And if the jury further find from the evidence that at the time plaintiff attempted to get inside of said mill, and said clutch was thrown on as aforesaid, and at the time said mill was started to revolve as aforesaid, if such is a fact, said Mitchell knew, or in the exercise of ordinary care on his part could have known, of the danger, if any, to which plaintiff was thereby exposed, if so the jury find; and if the jury further find that said Mitchell, with such knowledge, if any, of the danger, if any, to which plaintiff was then and thereby exposed, carelessly and negligently failed to give plaintiff any warning that said mill was about to be put in motion." . . .

Coming to defendant's final complaint that the verdict is excessive, the evidence discloses that, because of the accident, plaintiff was unable to perform any kind of physical labor for a period of over four months after he was injured; that he was confined in the hospital for

ten days and was under medical care for two months; that plaintiff's back and arms were severely burnt and injured; that he suffered a broken rib and received an injury to his chest, heart and nervous system; that because of his injuries he is unable to stand erect without having pains; that his physical strength has been greatly impaired and his weight greatly reduced; that plaintiff still suffered pain, because of his injuries, at the date of the trial, over two years after the accident and that plaintiff's said condition had not improved at the time of the trial but, on the contrary, was permanent.

Under the circumstances we are not prepared to say that the verdict is excessive.

It follows that the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the Hannibal Court of Common Pleas of Marion County is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.